**Charles Leslie LOVETT, Movant,**

v.

**Nancy Wright LOVETT, Respondent.**

Supreme Court of Kentucky.

April 11, 1985.

William Ward Allen, Jr., Caudill & Allen, Bowling Green, for movant.

Joe B. Campbell, Campbell, Smith, Kerrick & Grise, Bowling Green, for respondent.

GANT, Justice.

Discretionary review was accepted in this action for dissolution in an effort to resolve the uncertainties which have arisen as a result of *Inman v. Inman*, Ky.App., 578 S.W.2d 266 (1979), referred to as Inman I, and obiter dictum in *Inman v. Inman*, Ky., 648 S.W.2d 847 (1982), referred to as Inman II. These cases and their progeny have created what we will categorize as a "diploma dilemma" throughout the law of this state. This "diploma dilemma" is the treatment of a professional degree and ensuing license in those instances where there is insufficient property from which one spouse can provide for his or her reasonable needs.

Leslie and Nancy Lovett married in 1966, when both were high school seniors and 17 years of age. Their only child, a son, was born the following year. Both enrolled in Western Kentucky University and graduated in 1971, their principal support during this interval coming from their respective parents. In the fall of 1971, the couple and their child moved to Louisville, where Leslie enrolled in medical school at the University of Louisville and Nancy secured a teaching position. Nancy subsequently attained a master's degree in counseling and worked as a teacher and counselor until the summer of 1977. In the same period, between the fall of 1971 and the summer of 1977, Leslie received his medical degree and completed his internship and his residency in emergency medicine.

Shortly after moving to Bowling Green and establishing his practice, Leslie informed his wife that he desired a divorce in order to marry someone else. Action for dissolution of marriage was filed, but the parties reconciled shortly thereafter, and Nancy resigned her tenured position and moved to Bowling Green to reunite the family. At this juncture, she withdrew her retirement fund of some $4,000 to defray the cost of moving. In this period between 1971 and 1977, Nancy contributed some $37,000 to the support of the family, and Leslie about $9,000, an 80%/20% ratio. The parties purchased the farm in Warren County in 1978 and resided thereon until a second separation early in 1980, which led to this action for dissolution of marriage.

The trial court found the marriage irretrievably broken and entered a Decree of Dissolution, awarding joint custody of the son for a temporary period, with the ultimate question of custody to be later decided by the court. The trial court made division of the marital property and the nonmarital property, and awarded maintenance to the wife of $1,750 per month for ten years, or until the death or remarriage of the wife, whichever is the former. It is the maintenance award which is the principal issue in this case, said award having been affirmed by the Court of Appeals. The basis of this award by the trial court

was its finding that: (1) Nancy lacked sufficient property, including her division of the marital property herein, to provide for her reasonable needs; (2) Despite her education and experience and despite her diligent efforts to secure gainful employment, she was not able to support herself according to the standard of living established during the marriage; and (3) Charles had income in the year ending June 30, 1981, of about $125,000.

The trial court and the Court of Appeals, relying principally upon decisions of the latter and the dicta in Inman II, held that the proper solution of this "diploma dilemma" was to treat the professional degree and license as a source of maintenance and not as property capable of division under KRS 403.190. It is our position that this is correct. In Inman II, this court cited with approval certain language in *Mahoney v. Mahoney*, 182 N.J.Super. 598, 442 A.2d 1062 (1982), in speaking of a license or degree when that court stated:

It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on the death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property ...

KRS 403.200, our statute pertaining to maintenance, provides:

**403.200. Maintenance—Court may grant order for either spouse.**—(1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

This court interpreted KRS 403.200(1), in *Casper v. Casper*, Ky., 510 S.W.2d 253, 255 (1974), to mean that:

... maintenance may be awarded only after a finding that the spouse seeking maintenance (a) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) is unable to support himself through appropriate private employment *according to the standard of living established during the marriage.*

■ *Casper* thus sets out the threshold which must be crossed before we consider the amount of maintenance. There is no question herein concerning the lack of sufficient property to provide for the reason-

able needs of the wife, inasmuch as Nancy's total assets were slightly in excess of $25,000. There was also no abuse of discretion in the finding by the trial court that Nancy has been unable to support herself through "appropriate private employment," despite her educational background and her best efforts at securing work.

■ We must then consider whether the maintenance awarded herein constitutes an abuse of discretion, and in so doing examine the meaning of the phrase "standard of living established during the marriage" contained in KRS 403.200(1)(b) by judicial decision, and expressly contained in KRS 403.200(2)(c). In making our determination, we first note that the key word is the word "established." Although numerous cases since *Casper, supra,* have used the word "established" and "enjoyed" interchangeably, these are not words of the same definition or connotation. "Established" is customarily defined as "made firm," "brought into existence," "set on a firm basis," "put into a firm position," etc., and has its derivation from the Latin and French words "stabilire" or "stabilis," meaning, literally, "stable." "Enjoyed," on the other hand, is derived from the French "en" plus "joie(r)" and means "took pleasure or satisfaction in."

■ Thus, an "established" standard of living is not necessarily one which was "enjoyed" over a protracted period of time, but is the product of many factors. Although a professional degree, a license to practice, or an acquired specialty may not be property in the literal sense, they are assets of the marriage. For example, recognition of these as assets has been a long practice of lending institutions which make signature loans to newly practicing professionals. In the instant case, these assets were produced by the combined efforts of the husband, by his application of his abilities and his diligence, and by the contribution of the wife as a homemaker and mother, as well as her financial contribution of 80% of the income during the period these assets were acquired. Also, these are assets which of themselves must be considered when contemplating "the standard of living established during the marriage."

■ Herein, the court considered of primary importance the income of $125,000 attained by the professional spouse during the year commencing July 1, 1980, and ending June 30, 1981. During this entire period, the parties hereto were separated, so this standard of living was hardly "enjoyed." The record discloses that the husband's income for the two years next preceding the separation was $26,000 and $63,500. However, we find no error in applying the 1981 figure as relating not only to KRS 403.200(2)(f)—the ability of the husband to pay—but also as indicia of the standard of living established during the marriage by attainment of the professional degree and license.

In examining the decisions of other states, we find no clear-cut solution to this "diploma dilemma." Some states simply deny any recovery by the non-professional spouse. *See In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978). Some treat the degree as marital property, as in *Moss v. Moss,* Mich., 80 Mich.App. 693, 264 N.W.2d 97 (1978), and *Vaclav v. Vaclav,* 293 N.W.2d 613, 617 (1980). The court in *Mahoney, supra,* created an equitable remedy which it called "reimbursement alimony." Indiana, in its code section 31–1–11.5–11(c), has provided a statutory remedy, so when "there is little or no marital property, [the court] may award either spouse a money judgment not limited to existing property."

■ It is our opinion that the problem is best solved by application of our existing statutory and case law and treating the professional degree and license as relevant factors to be considered in the standard of living established during the marriage, awarding maintenance based thereon. We are cognizant that this solution depends on the specific facts of each case, but this represents no radical departure from the law of domestic relations. We do not intend to sentence the professional spouse to servitude or award the non-contributing spouse with a meal ticket. As maintenance, the award may be modified in cases of unconscionability.

It is the holding of this court that a professional degree and a license to practice are relevant factors to be considered by the trial court in its determination of the standard of living established during the marriage, both as this standard relates to the ability of the non-professional spouse to support himself/herself and as it relates to the amount and period of time of the maintenance. Also, as maintenance, the amount may be modified under the provisions of KRS 403.250 if proper showing of unconscionability is made.

The other issue presented to us for review concerns the temporary custody provisions relating to the child, under which the court declared it would subsequently determine final custody. Because of the proximity of this child's 18th birthday, we decline to reverse the Court of Appeals, which affirmed the trial court.

The opinion of the Court of Appeals is affirmed, and this case is remanded to the trial court for reallocation of certain non-marital property in conformity therewith.

STEPHENS, C.J., and AKER, LEIBSON, GANT and WINTERSHEIMER, JJ., concur.

STEPHENSON and VANCE, JJ., concur in result only, each filing herewith a separate opinion concurring in result.

STEPHENSON, Justice, concurring in result.

It is my opinion that the "maintenance" statute is simply not broad enough to cover the situation presented here. I believe that in order to justify this award of "maintenance" we should find that the ability to earn money by virtue of possessing a medical degree and license to practice medicine is a form of property in these circumstances.

Therefore, I concur in result only.

VANCE, Justice, concurring in result.

This opinion affirms the award of maintenance by the trial court, and I concur in that result. In my opinion, however, this court has again displayed a disturbing tendency to rule upon matters which are unnecessary to the decision of the case.

The medical degree in this case was obtained in 1977, and by the time the dissolution of marriage was granted, the movant was earning $125,000 per year. The parties had acquired a large house and 97 acres of land in Warren County, and they had established a lifestyle which had already begun to reflect the financial potential of the medical degree and license.

The award of maintenance can be affirmed on the facts of this case. It is entirely unnecessary to the decision of this case for us to rule that the potential for increased earnings brought about by a professional degree and license is not an asset which can be considered in the division of marital property.

I believe, therefore, that we should wait for a case where the decision of this matter is necessary to the disposition of the case before we decide the question. In particular, I am thinking of a case where a divorce is granted immediately after the professional degree is obtained. Then, there would have been absolutely no opportunity for the married couple to have established a standard of living which reflected the potential of the increased earning capacity. All that they would have established would be years of sacrifice, willingly undertaken, because of the prospect of future advantages which they would share.

Divorce, shortly after obtaining the professional license, nullifies the prospect of the future mutual benefit from the shared sacrifices of the past. Furthermore, the parties are not equally equipped to fend for themselves.

Our statute does not authorize maintenance for a spouse who is able to maintain herself. In *Casper v. Casper*, Ky., 510 S.W.2d 253 (1974), we interpreted this to mean the inability of a spouse to support himself *according to the standard of living established during the marriage.* No case, to my knowledge, has extended this to mean "inability to support one's self" according to a "potential for support" established during the marriage.

Thus, I cannot find authority for the use of a *potential for increased earnings* which has not yet occurred as a basis for an award of maintenance in excess of that necessary to maintain the spouse in accordance with the standard of living established by the parties. Some states consider the "potential for increased earning capacity" which accompanies a professional degree earned during the marriage as a marital asset in the division of marital property. *In Re Marriage of Horstman,* Iowa, 263 N.W.2d 885 (1978); *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975).

Admittedly, the valuation of this potential for purposes of property division poses some difficulty, but no more difficulty, it seems to me, than a determination of the extent to which a professional degree should be considered in awarding maintenance.

My premise is not that we should in this case hold the potential of increased earning capacity which attends a professional degree to be marital property, but simply that we should not hold it is not marital property in a case where such a holding is entirely unnecessary to the disposition of the case.