LOUISE W. STEARNS *v.* ARTHUR B. STEARNS
(2810)

HULL, BORDEN and DALY, Js.

Argued April 12—decision released June 25, 1985

*Thomas W. Mochnick,* with whom was *F. Timothy McNamara,* for the appellant (defendant).

*William C. Kroll,* for the appellee (plaintiff).

BORDEN, J. The defendant in this marital dissolution case appeals from the awards of alimony and support incident to the judgment of dissolution. We find no error.

The trial court found the following facts: The parties were married in 1949. During their thirty-four

years of marriage, they had eight children, one of whom is still a minor. While both parties agree that the marriage had broken down irretrievably, the defendant was more at fault. He had had an extramarital affair with another woman for the last three years of his marriage to the plaintiff, had fathered a child with the other woman, had purchased a house for the woman and baby to live in from assets owned jointly with the plaintiff, and had denied having such an affair to his wife for three years, admitting it only when the other woman was seven months pregnant.

The court further found that the plaintiff had a high school education and had been a wife and mother for most of her married life. She had been a typist before her oldest child was born. During the latter years of the marriage, she worked part-time at the defendant's dairy doing clerical work. At the time of the dissolution, she was employed as a cashier, with a net income of $78 per week. She owned a one-half interest with the defendant in the marital home, valued at $100,000, in a 1978 automobile, valued at $2500, in an affiliated mutual fund, valued at $15,000, and in fifty shares of Travelers Insurance Company stock, valued at $1500. She had no other assets except for household furnishings.

The defendant was a dairy farmer who worked on the family-run dairy farm which was originally started by his grandfather. In January, 1952, three years after the parties were married, a partnership was formed by Willard J. Stearns, the defendant's father, and his sons, including the defendant, to run the business. In 1978, a corporation encompassing the partnership known as Willard J. Stearns & Sons was formed. The defendant owned 503 shares of this corporation, his brother, 503 shares, and his father, 506 shares. Two of the defendant's sons own 30 to 35 shares each and

two of the defendant's brother's sons own 30 to 35 shares each. The defendant, therefore, owns approximately 30 percent of the stock.

The court chose not to believe the defendant's total valuation of his shares of stock at $100,000, or less than $200 per share. It found that based on all the evidence presented the stock was worth, at the very least, $1000 per share. The evidence considered by the court on this issue included the following: The corporation's tax returns showed net profits between 1978 and 1982 in the range from $71,000 to $135,000. One of the defendant's brothers, who had a 25% interest in the corporation, sold his interest in 1970 for $140,000. The sales from the dairy corporation had risen from $1.1 million in 1978 to $1.5 million in 1982. The land and buildings had been appraised by the defendant's appraiser in 1978 for $1,071,000. Three buildings, costing $150,000, had since been built on the property. A 1982 buy-sell agreement signed by the defendant listed the stock's worth at $1000 per share. The plaintiff's accountant appraised the corporation in 1983, using the 1978 appraisal of $1,071,000 for the land and buildings. His appraisal of the total fair market value of the corporation was $2,467,073.22, arrived at by taking the net assets of the corporation, excluding good will, calculated at $1,896,379.77, and adding in the good will of the business, calculated at $570,693.45.

The court also chose not to accept the defendant's claim that his income from the dairy business was only about $18,000. The court stated that, "[a]lthough this may be so, the court does not believe that it has to be so." The court believed that the statement of the plaintiff's appraiser in his 1983 appraisal that "[t]he average salary for the three officers [of the corporation] was $16,083.33 for the year ended June 30, 1982. This amount was very low considering the corporation had sales in excess of 1.5 million dollars for the year ended June 30, 1982." The defendant's sons earn $30,000 per

year from the dairy business. His 1978 income tax return shows that for 1978 alone, his income from the farm was $48,000. The court found that the evidence indicated that the defendant and other officers are taking less money from the business as income so that the corporation can buy more assets and increase the value of the business.

The court also found that the defendant owned a one half interest in a real estate partnership with his brother, valued at $80,000. The partnership had rental income of $990 per month, plus income from the sale of wood and from the dairy farm for the use of 100 acres owned by the partnership. The defendant nets $46 per week from the partnership. The court made additional findings about the defendant's financial status which are undisputed.

The court rendered a judgment of dissolution, which provided, in part, that the defendant transfer to the plaintiff all his right, title and interest in the marital home, the 1978 automobile, the affiliated mutual fund and the 50 shares of Travelers Insurance Company stock; that the defendant pay, as unallocated alimony and support, $1500 per month until the minor child of the marriage reaches age eighteen, at which time he shall pay $1000 per month as periodic alimony; that the defendant pay $175,000 as lump sum alimony, to be paid at the rate of $17,500 per year for ten years; and that the defendant pay $10,000 of the plaintiff's counsel fees. On appeal, the defendant makes two principal claims: (1) that the trial court erred in the methodology it used to arrive at the value of the stock and in valuing the stock at $1000 per share; and (2) that the trial court erred in requiring the defendant to pay $1500 per month as unallocated alimony and support.[1]

---

[1] The defendant also raised a challenge to the court's award of counsel fees in its preliminary statement of issues, but failed to brief this issue. We, therefore, consider it abandoned. *City Savings Bank of Bridgeport* v. *Dessoff*, 3 Conn. App. 644, 646 n.3, 491 A.2d 424 (1985).

The defendant's first claim is couched in terms suggesting that the court misapplied the law in this case, but the claim actually boils down to the defendant's disagreement with the court's evaluation of the credibility of the witnesses and the weight to be given certain evidence. It should be reiterated that the weight to be given the evidence and the credibility of the witnesses are within the sole province of the trial court. *Vaiuso* v. *Vaiuso,* 2 Conn. App. 141, 146, 477 A.2d 678, cert. denied, 194 Conn. 807, 482 A.2d 712 (1984). The trial court has the " 'unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us.' " *Lupien* v. *Lupien,* 192 Conn. 443, 445, 472 A.2d 18 (1984), quoting *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). With this standard of review in mind, we cannot say, as the defendant would have us do, that the trial court's valuation was clearly erroneous because it relied on the testimony of the plaintiff's appraiser and accountant. *Turgeon* v. *Turgeon,* 190 Conn. 269, 275–76, 460 A.2d 1260 (1983).

The defendant's additional argument in this regard, challenging the court's reliance on the buy-sell agreement and the value of the defendant's brother's interest in the business a few years before it was incorporated, is also without merit. The court was entitled to consider these as elements tending to establish value and factor them into its analysis of the value of the corporate stock. Fair market value is the price that would probably result from fair negotiations between a willing seller and a willing buyer. *Turgeon* v. *Turgeon,* supra, 275. Since this was a closely held, family run business, it is reasonable for the court to have inferred that any actual willing buyers were likely to be the corporation or other family members who

were stockholders. The buy-sell agreement appears to place a fair and considered purchase price on the stock. The court, therefore, properly used it to aid in its determination of the current fair market value of the stock. Similarly, the transfer of a one quarter interest in the business in 1970 for $140,000 could be used as an indication of the value which the other family members, individually or through the corporation, might place on the defendant's stock. It was, therefore, appropriately relied upon in the court's determination.

The defendant's claim that the court's valuation was improper, therefore, must fail. The question of fair market value is a question of fact and must stand unless found to be clearly erroneous. *Turgeon* v. *Turgeon,* supra, 275–76. "It is generally recognized that closely held corporate stock cannot be valued reasonably by the application of any inflexible formula." Id., 276. "In assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. *Esposito* v. *Commissioner of Transporation,* 167 Conn. 439, 441, 356 A.2d 175 [1945]; *Textron, Inc.* v. *Wood,* 167 Conn. 334, 345, 355 A.2d 307 [1974]. The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." *Turgeon* v. *Turgeon,* supra, 294. The trial court specified that "[b]ased on all the evidence presented, the court believes that the defendant's stock is worth, at the very least, $1,000 per share." The opinions of the appraiser, the accountant and the defendant were taken into account, as well as

other items in evidence tending to show the stock's value. The court restated the general formulation used by the accountant to determine market value; it was not misapplied. Nor did the court overlook or disregard any other test which it was required to consider. There is no contention that the method used by the accountant was not a "recognized appraisal method."[2]

The court properly weighed all the evidence before it. Despite the defendant's effort to transform this claim of an abuse of discretion in a marital dissolution case into a complex corporate valuation case, we find it is the former. There was ample evidence to support the court's valuation of $1000 per share and its assessment was not clearly erroneous or an abuse of discretion.

The defendant's second claim, that the court's award of unallocated alimony and support was erroneous, stands on three bases, none of which has merit. First, the facts of this case indicate that it was appropriate

---

[2] The defendant does argue that the method used by the accountant is improper because it is not the method of valuation "expressly approved" by the Supreme Court in *Turgeon* v. *Turgeon*, 190 Conn. 269, 274, 460 A.2d 1260 (1983). This argument distorts what the court stated in *Turgeon*. In that case, two expert appraisers testified, one using the capitalization of income approach and one using a liquidation approach. The court stated that, under the facts of that case, it was more appropriate to use the capitalization of income approach, which had previously been approved by the court, than a liquidation approach. Id. It did not state, or even imply, that this was the only method of valuation available. Rather, the court stated that an inflexible formula could *not* be used to value closely held corporate stock reasonably. The trial court in the present case was correct in not requiring a certain formula be used, and in being flexible in applying the method presented in light of the other evidence presented in the case, as directed by *Turgeon*.

Furthermore, unlike *Turgeon*, only one method of valuation was presented in this case, which was never objected to on the basis of not being a recognized method of valuation. The defendant was given ample opportunity to cross-examine the accountant and point out faults in the method used. This, however, affected only the weight of the evidence, and not the court's ability to use it in its ultimate determination.

for the court to base its award for alimony and child support on the earning capacity of the defendant rather than the actual earned income; *Miller* v. *Miller,* 181 Conn. 610, 611–12, 436 A.2d 279 (1980); *Schmidt* v. *Schmidt,* 180 Conn. 184, 189–90, 429 A.2d 470 (1980); and the court did not err in so doing. Second, the court did not find that the defendant, a minority shareholder in the corporation, could unilaterally increase his earnings from the corporation; the defendant mischaracterizes the court's findings by stating that it did so. Third, the admission of the accountant's 1983 appraisal report was not excepted to, and the defendant cannot challenge its admissibility on appeal. *State* v. *Jackson,* 3 Conn. App. 132, 134–35, 485 A.2d 934 (1985).

There is no error.

In this opinion the other judges concurred.