SHIRLEY R. GREEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; LARRY W. MAYNARD AND JUDY R. MAYNARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket Nos. 20146-84, 26125-84.
United States Tax Court
T.C. Memo 1986-269; 1986 Tax Ct. Memo LEXIS 339; 51 T.C.M. (CCH) 1325; T.C.M. (RIA) 86269; July 2, 1986; REVERSED IN PART, VACATED IN PART AND REMANDED August 22, 1988 John David Cole, for the petitioner Shirley R. Green. Philip E. Wilson, for the petitioners Larry W. and Judy R. Maynard. Douglas Weaver, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Petitioner
1980
1981
Shirley R. Green
$ 2,150.02
$2,517.36
Larry W. and Judy R. Maynard
$13,692.46
$3,180.00
After *341 concessions, the only issue for decision in these consolidated cases is whether payments received by petitioner Shirley R. Green from petitioner Larry W. Maynard pursuant to a divorce decree entered in July 1976 are includable in her income under section 71[1] and deductible from his income under section 215. All the facts are stipulated. Petitioners Larry W. Maynard and Judy R. Maynard resided in Franklin, Kentucky, at the time their petition was filed. At the time her petition was filed, Shirley R. Green resided in Alvaton, Kentucky. Larry W. and Judy R. Maynard filed joint Federal income tax returns for 1980 and 1981. Shirley R. Green filed joint Federal income tax returns for 1980 and 1981 with her husband, Lawrence P. Green. Petitioner Larry W. Maynard (Larry) and petitioner Shirley R. Green (Shirley) were formerly husband and wife. They were married on April 4, 1958, in Pike County, Kentucky. Larry and Shirley have two children: a daughter, Larita Ann Maynard, born July 30, 1959, and a son, Larry Keith Maynard, born March 29, 1963. In 1967 Larry entered medical *342 school at the University of Kentucky and graduated from that institution in 1972. Larry and Shirley were divorced pursuant to a decree of dissolution and child custody decree entered on May 16, 1975, by the Simpson Circuit Court, Simpson County, Kentucky, (county court) in a civil action entitled Shirley Rowe Maynard v. Larry Wayne Maynard (divorce action). Pursuant to this decree, Shirley was awarded custody of the couple's two minor children. By an order entered July 31, 1975, the county court appointed a certified public accountant as a special commissioner of the court for the purpose of preparing a financial statement of assets, liabilities, and net worth of the parties to the divorce action (commissioner's report). The commissioner's report dated July 31, 1975, lists the following assets, liabilities, and net worth of the parties: Value of
Amount of
Net
Assets and Liabilities
Assets
Liability
Worth
1. Joint Property
(a) House & Lot - Huntington Park
$ 70,000.00
(b) 15 acres on Broadway
16,000.00
(c) Household furnishings
4,000.00
(d) Debt to Simpson County Bank
secured by mortgage on (a)
and (b) above
99,455.00
Total
$ 90,000.00
$ 99,455.00
($ 9,455.00)
2. Larry's Separate Property
(a) Cash value of life insurance
$ 1,837.00
(b) Building lot on Brookhaven
Rd.
5,500.00
(c) Medical office: (1) Assets
65,720.00
(2) Liabilities
36,982.00
(d) Stock in Franklin Country
Club
600.00
(e) Larry Maynard P.S.C.
0
(f) 1975 Ford Bronco
3,800.00
(g) Overdraft at Simpson County
Bank
117.00
(h) Note payable to GMAC secured
by lien on 1974 Pontiac
Grand Prix
4,682.00
Total
$ 77,457.00
$ 41,781.00
$35,676.00 3. Shirley's Separate Property
(a) Checking account
$ 471.00
(b) Series E savings bond
25.00
(c) Cash value of life insurance
347.00
(d) Building Lot - Huntington Park
5,000.00
(e) 1974 Pontiac Grand Prix
3,750.00
(f) Jewelry and paintings
634.00
(g) Note payable to a bank in Pike
County, Kentucky (student loan
for Larry's educational expenses);
note guaranteed by Larry
7,583.00
(h) Note payable, William H.
Young, Jr., balance due on
purchase of lot
2,115.00
Total
$ 10,227.00
$ 9,698.00
$ 529.00 Total Assets and Liabilities
$177,684.00
$150,934.00
Net Worth
$26,750.00 *343 All the assets and liabilities itemized in the commissioner's report were acquired by Larry and Shirley during their marriage. The commissioner's report was entered in the divorce action on November 12, 1975, and neither Larry nor Shirley filed objections to the report. The county court entered its final decree in the divorce action on July 8, 1976 (final decree), which provides in part: [2]
FINDINGS OF FACT * * * 2. The Court has considered the entire record in its determination of marital property, and particularly the statutory requirements of KRS 403.190. In determining the award of marital property to petitioner, the Court has considered the contribution of each spouse to the acquisition of marital property, including the contribution of petitioner during the time she worked while respondent was in medical school and her contribution as a homemaker. The Court has considered the duration of the marriage and economic circumstances and hereby awards petitioner, Shirley Rowe Maynard, the sum of $72,500.00 as her share of the marital property. * * * 12. The Petitioner shall be permitted to occupy the residence of the parties located in Huntington Park Subdivision, *344 Franklin, Kentucky, until such time as the parties' youngest child reaches eighteen years of age or Petitioner re-marries, whichever occurs first. During the time Petitioner occupies the said residence Respondent shall pay the taxes, insurance and major maintenance on said residence and further make the monthly mortgage payments on the residence, the respondent receiving a credit against the award to the Petitioner for marital property in the sum of $700.00 for each monthly payment he makes. Petitioner may at any time decide to move from the premises and at such time as the Petitioner vacates the premises, Respondent shall pay Petitioner the sum of $700.00 per month on the award of marital property as above setforth. At such time as Petitioner ceases to occupy the premises, she shall convey all her right, title and interest into the premises to Respondent. * * * CONCLUSIONS OF LAW 1. The Court concludes as a matter of law that Petitioner should be allocated the sum of $72,500.00 as her share of the marital property, taking into consideration KRS 403.190, it being the Court's opinion that Petitioner contributed equally with respondent in acquiring the marital property which *345 they now possess, and further that petitioner was the primary contributor during such time as respondent attended medical school, placing respondent now and in the future in a position to earn a substantial income. Beggs v. Beggs, Ky., 479 S.W. 2d 598 (1972). * * * IT IS THEREFORE ORDERED AND ADJUDGED AND DECREED AS FOLLOWS: 1. The Petitioner is awarded the sum of $72,500.00 as her share of marital property, the sum to draw interest at the rate of 7 percent per annum until paid in full on the unpaid balance, from the date of this decree, with Respondent making monthly payments in the sum of $700.00, with the payment being applied first to accrued interest and then to principal. So long as the Petitioner occupies the parties' residence in Huntington Park Subdivision as above provided, Respondent shall pay the taxes, insurance, major maintenance and shall further make the monthly mortgage payments due on the residence, the Respondent to receive a monthly credit of $700.00 toward satisfaction of the above marital property award of $72,500.00 to the Petitioner. At such time as the Petitioner ceases to occupy the premises, it shall be the responsibility of the Respondent *346 to make monthly payments of $700.00 directly to the Petitioner, until such time as the marital property award of $72,500.00 plus interest, is paid in full, with the Respondent having the right to prepay all or any part of the indebtedness at any time. * * * 7. It is the intention of the Court to afford the Petitioner and parties' infant children security for the payment of the above award of marital property and child support. In the event of Respondent's death or disability, Petitioner and parties' infant children shall have a lien and equity in the residence in Huntington Park above described or such other property, both real and personal, as Respondent may own or have an interest in, to the extent of the child support payments and any unpaid balance of the $72,500.00. In the event Petitioner is called upon to convey to Respondent her interest in the Huntington Park property, as provided above, the Petitioner shall not be required to make such conveyance of the Huntington Park property to Respondent until or unless the Respondent has satisfied payment of the $72,500.00 marital property award to the Petitioner or until and unless the Respondent shall afford the Petitioner good *347 and sufficient surety in such manner as to guarantee his full payment of said award as set forth in this decree and Judgment to Petitioner. [3]
In addition to awarding Larry the family residence, subject to Shirley's right of occupancy, the county court awarded Larry the jointly owned tract of land on Broadway and all his separately owned property except the country club membership. Shirley received the membership, her separately owned property, and the household furnishings. In consideration for her obligation to satisfy Larry's education loan, Larry was ordered to pay the legal fees incurred in the divorce action. Larry was further ordered to designate Shirley as beneficiary of a life insurance policy and to pay child support. Pursuant to the final decree, Larry made 12 payments of $700 each to Shirley in both of the years 1980 and 1981 which totaled $8,400 in each of *348 those years. Petitioners Larry and Shirley and respondent have agreed that $4,016 of the $8,400 paid by Larry in 1980 and $3,681 of the $8,400 paid by Larry in 1981 was interest. Larry is therefore entitled to deduct the amounts designated as interest expense, and Shirley must recognize the same designated amounts as interest income. Thus, the only disputed issue is whether the noninterest portion of the payments made pursuant to the final decree is includable in Shirley's income under section 71 and deductible from Larry's income under section 215. The noninterest portion of the payments is $4,384 for 1980 and $4,719 for 1981. Shirley contends that the payments to her by her former husband, Larry, pursuant to the final decree entered in their divorce action, were part of a property settlement awarded to her by the county court, and as such, were not includable in her gross income under section 71. Larry contends that the payments constituted alimony or maintenance, includable in Shirley's gross income under section 71 and deductible from his gross income under section 215. In his trial memorandum, respondent acknowledges that he is a "stakeholder" in the case but takes the *349 position that the payments are neither includable by Shirley nor deductible by Larry because they are in the nature of a property settlement. Section 71(a)(1), [4] as in effect during the tax years in dispute, provides that periodic payments [5] received by a wife in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under a divorce decree or written instrument incident to the divorce, are includable in the wife's gross income. A companion section 215(a)[6] provides for a corresponding deduction to the husband for payments made to his wife which are includable in her income under section 71. The requirement that the payments be made in discharge of a legal obligation imposed "because of the marital or family relationship" has been interpreted to require that the payments be in the nature of support rather than a property settlement. McCombs v. Commissioner,397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; Bishop v. Commissioner,55 T.C. 720, 725 (1971); secs. *350 1.71-1(b)(4) and 1.71-1(d)(3)(i)(b), Income Tax Regs. *351 The classification of payments as maintenance or property settlement for purposes of sections 71 and 215 is not determined by reference to State law. Bardwell v. Commissioner,318 F.2d 786, 789 (10th Cir. 1963), affg. 38 T.C.84 (1962). However, property interests of the divorcing parties do depend on State law. Schottenstein v. Commissioner,75 T.C. 451, 462 (1980). The Kentucky statute governing the division of property pursuant to a divorce decree provides that the court shall assign each spouse's property to him or her and divide the "marital property [7] without regard to marital misconduct in just proportions considering all relevant factors." Ky. Rev. Stat. Ann. sec. 403.190(1) (1984). The "relevant factors" include: (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker; (b) Value of the property set apart to each spouse; (c) Duration of the marriage; and (d) Economic circumstances *352 of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children. The court may grant maintenance only if it finds that the spouse seeking maintenance (Ky. Rev. Stat. Ann. sec. 403.200(1) (1984)): (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) Is unable to support himself through appropriate employment of is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. [8]
*353 In resolving the character of an award in a divorce decree, attention is first given to the language and structure of the decree. Griffith v. Commissioner,749 F.2d 11, 13 (6th Cir. 1984), affg. a Memorandum Opinion of this Court. The determination of whether payments are made for maintenance or are part of a property settlement, however, is not controlled by the labels assigned to the payments. Hesse v. Commissioner,60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975); Thompson v. Commissioner,50 T.C. 522, 525 (1968); Bardwell v. Commissioner,38 T.C. 84, 89-90 (1962), affd. 318 F.2d 786 (10th Cir. 1963). [9] The issue is a factual one of intent. In the case of an ambiguous decree, resolution of the issue requires an examination of all the surrounding facts and circumstances. Griffith v. Commissioner,749 F.2d at 14; Wright v. Commissioner,62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976); *354 Hesse v. Commissioner,supra at 691. Careful analysis of the county court's decree leads us to conclude that it is ambiguous and that the $72,500 award was intended to be both a marital property settlement and a provision for Shirley's maintenance. It is true that the full $72,500 was to draw interest; that its payment was not subject to contingencies which would decrease or terminate the obligation such as the death of either party, Shirley's *355 remarriage, or a change in Larry's financial situation; and that Larry was to provide sufficient surety to guarantee payment of the full amount. These factors are frequently cited as indicating a property settlement.See McCombs v. Commissioner,397 F.2d 4, 7-8 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; Griffith v. Commissioner,749 F.2d at 14; Thompson v. Commissioner,50 T.C. at 526. On the other hand, the courts have recognized that those factors are not decisive and do not preclude a conclusion that all or a part of the award was intended to provide maintenance for the recipient spouse. Hesse v. Commissioner,60 T.C. at 693; Bishop v. Commissioner,55 T.C. 720, 726 (1971); Thompson v. Commissioner,50 T.C. at 525-526. The county court made no express provision for Shirley's support following the divorce even though she received only a small portion of the marital property and took custody of the two minor children.[10]The county court found that Shirley contributed equally with Larry "in acquiring the marital property which they now possess" and incorporated *356 into its decree the commissioner's report showing the separate and joint assets and liabilities of Larry and Shirley which revealed a net worth of only $26,750. Yet the county court awarded Shirley $72,500, a sum far in excess of the net value of the marital property. See Brown v. Commissioner,16 T.C. 623, 631 (1951). Indeed, the $72,500 award to Shirley was more than three times the net value of the marital property remaining after the award to Shirley and could not, therefore, in its entirety have represented a division of property. See Riddell v. Guggenheim,281 F.2d 836, 840-841 (9th Cir. 1960); Hesse v. Commissioner,60 T.C. at 692. *357 In addition to stating that Larry and Shirley contributed equally to acquiring the existing marital property, the decree provides that Shirley "was the primary contributor during such time as * * * [Larry] attended medical school, placing * * * [Larry] now and in the future in a position to earn a substantial income. Beggs v. Beggs, Ky., 479 S.W.2d 598 (1972)." As we read the applicable Kentucky statute (Ky. Rev. Stat. Ann. sec. 403.190(2) (1984), quoted in n. 7) the term "marital property" does not include a spouse's future earning power. The term is limited to "property acquired by either spouse subsequent to the marriage," Ky. Rev. Stat. sec. 403.190(2) (1984), quoted in n. 7, supra, and includes only property acquired before a legal separation. See Stallings v. Stallings,606 S.W.2d 163, 164 (Ky. 1980). The Beggs case, cited by the county court, is consistent with our interpretation of the statute. In that case, the wife had been "the bread-winner while the husband was obtaining the education which seemed in large part to enable him *358 to earn a substantial income." 479 S.W.2d at 601. In acquiring the property held at the time of the divorce, however, she had contributed only 16.51 percent and her husband 83.49 percent. The trial court restored to the wife certain property inherited from her parents and limited her award to her percentage contribution to the acquisition of the marital property. Because she did not prove that she was entitled to a divorce, she was not eligible for alimony. The court of appeals reversed and directed the chancellor to reallocate the property acquired through their team effort, giving consideration to the wife's work while the husband was obtaining his education, her management of the family household, and her attending the needs of the children. The property award to her, however, was to be limited to a division of the existing marital property; there is no suggestion in the opinion that, because of her assistance to the husband's education, the award was to include a share of the husband's future potential earnings. Under Kentucky law, Shirley's assistance to Larry while *359 he was getting his medical degree did not give her a property interest in his degree or his future earnings. In Lovett v. Lovett,688 S.W.2d 329 (Ky. 1985), the Supreme Court of Kentucky upheld as correct a decision of a local divorce court which treated a "professional degree and license as a source of maintenance and not as property capable of division under K.R.S. 403.190." 688 S.W.2d at 331. The court held that "a professional degree and a license to practice are relevant factors to be considered by the trial court in its determination of the standard of living established during the marriage, both as this standard relates to the ability of the non-professional spouse to support himself/herself and as it relates to the amount and period of time of the maintenance." 688 S.W.2d at 333. In support of its holding that a license or degree is not marital property subject to division between divorcing spouses, the Lovett court cited Mahoney v. Mahoney,182 N.J. Super. 598, 442 A.2d 1062, 1066 (1982), in which the following statement from In re Marriage of Graham,194 Colo. 429, 574 P.2d 75, 77 (1978), *360 was quoted: It [a professional degree or license] does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on the death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. * * * Further evidence of the maintenance nature of the award is found in the fact that it was not required to be paid in cash. Shirley was given the right to occupy the family residence until their youngest child reached 18 years of age or she remarried, whichever occurred first. Nothing in the decree forbade her continued occupancy beyond that date with Larry's acquiescence. Under the terms of the decree Larry became entitled to a credit of $700 per month against the $72,500 award, as long as she occupied the residence. [11] Only after she ceased to occupy the residence did he become liable to make *361 cash payments to her. This arrangement for Shirley to live in the house was not an award of a property interest but was in the nature of alimony. See Williams v. Williams,500 S.W.2d 79, 81 (Ky. 1973). For the foregoing reasons, we think it clear that the $72,500 awarded to Shirley by the county court was not entirely a property settlement. Because the award exceeded the net value of the property owned by both Larry and Shirley by nearly three times, the award could represent only a share of Larry's expected subsequent income. "One of the purposes intended by Congress in enacting this statute [sec. 71] was that it would impose upon the person who actually received the use and benefit of income the responsibility for paying the taxes on that income." Bardwell v. Commissioner,318 F.2d 786, 789 (10th Cir. 1963), affg. 38 T.C. 84 (1962); Lambros v. Commissioner,459 F.2d 69, 71 (6th Cir. 1972), *362 affg. a Memorandum Opinion of this Court; S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 568. In contrast, a nontaxable payment in a property settlement was intended to permit a divorcing couple to make "a division of capital tax free." Bardwell v. Commissioner,supra at 789. See also Soltermann v. United States,272 F.2d 387, 388 (9th Cir. 1959); Thompson v. Commissioner,50 T.C. 522, 525 (1968); Hesse v. Commissioner,60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975). Shirley and Larry had no property to be divided other than the assets and liabilities shown in the commissioner's report adopted by the county court. It is clear, therefore, that the full amount of the $72,500 was not merely a division of capital but was, in part, intended by the county court to be a "lump-sum maintenance" award payable in installments. Cf. McGowan v. McGowan,663 S.W.2d 219, 225 (Ky. Ct. App. 1983); Dame v. Dame,628 S.W.2d 625, 627 (Ky. 1982). [12]
*363 Having concluded that the county court decree is ambiguous and that the $72,500 award to Shirley represented a property settlement as well as a provision for maintenance, we must decide what portion falls in each category. Soltermann v. United States,272 F.2d at 390; Bishop v. Commissioner,55 T.C. 720, 725 (1971). The finding by the county court that Larry and Shirley contributed equally to the acquisition of the property they owned when they were divorced indicates that Shirley was entitled to $13,375 by way of a property settlement. This sum represents 50 percent of the family's net worth. In addition to her separate property, she received the home furnishings worth $4,000, Larry's country club membership worth $600, and her separate property with a net value of $529, as reflected in the commissioner's report, and the periodic cash payments totaling $72,500 representing a total of $77,629. Taking into account all relevant facts and circumstances, we conclude that $64,254 ($77,629 - $13,375) of this total was intended as support, and that 82.8 percent ($64,254 divided by $77,629) of the cash payments (noninterest portion) each year are includable *364 in Shirley's income under section 71 and deductible from Larry's income under section 215. [13]
To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. "Petitioner" in the final decree refers to Shirley; "respondent" refers to Larry. ↩
3. An amortization schedule "prepared for information only" reveals that the court award ($72,500) at 7 percent interest payable in installments of $700 per month would require a payment stream of 13 years and 4 months.↩
4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of Divorce or Separate Maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
5. Sec. 71(c)(1) provides in general that installment payments in discharge of a principal sum specified in the divorce decree will not be considered "periodic" for purposes of sec. 71(a). Sec. 71(c)(2) carves out an exception to the general rule for a principal sum which is to be paid in installments over a period of more than 10 years, but only to the extent of 10 percent of the principal sum. The amortization schedule in the instant case provides that the principal sum of $72,500 will be paid in installments of $700 per month over a period of 13 years and 4 months. Thus, the monthly payments received by Shirley would be periodic for purposes of sec. 71(a)↩. 6. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income.
7. Ky. Rev. Stat. Ann. sec. 403.190(2) (1984) provides in part as follows: "[M]arital property" means all property acquired by either spouse subsequent to the marriage except: (a) Property acquired by gift, bequest, devise, or descent; (b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; (c) Property acquired by a spouse after a decree of legal separation; (d) Property excluded by valid agreement of the parties; and (e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage. ↩
8. Ky. Rev. Stat. Ann. sec. 403.200(2) (1984) provides: (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including: (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian; (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (c) The standard of living established during the marriage; (d) The duration of the marriage; (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.↩
9. In her brief, Shirley cited Schatten v. United States,746 F.2d 319, 322 (6th Cir. 1984), where the court of appeals held that "a party may collaterally attack the plain language of the [settlement] agreement in order to obtain a tax advantage only by showing mistake, undue influence, fraud or duress." However, the agreement in that case not only labeled the payments as alimony, but spelled out the parties' agreement to the specific tax treatment to be afforded the payments.Moreover, the court reached the same conclusion, that the payments were alimony includable in the recipient's income under sec. 71, after considering all the facts and circumstances. 746 F.2d at 322-323↩.
10. In her brief, Shirley cited Hollon v. Hollon,623 S.W.2d 898 (Ky. 1981), where the divorce decree contained findings of fact insufficient to comply with the Kentucky maintenance award statute (Ky. Rev. Stat. Ann. sec. 403.200(1), quoted above). The instant decree contains references to the factors which the court must consider in awarding maintenance: (1) that Shirley lacked property sufficient for her needs, and (2) that Shirley was granted custody of the two minor children. Moreover, the intent of sec. 71 was to provide for uniform tax treatment among the several States regardless of the State court's compliance with local statutory requirements. Bardwell v. Commissioner,318 F.2d 786, 789 (10th Cir. 1963), affg. 38 T.C. 84↩ (1962).
11. As to the tax consequences of the arrangement during the period that Shirley occupied the house, see Pappenheimer v. Allen,164 F.2d 428 (5th Cir. 1947); Bradley v. Commissioner,30 T.C. 701↩ (1958).
12. Casting the award to Shirley in the form of a lump sum or as "alimony in gross" prevented its subsequent modification by the State court. See Dame v. Dame,628 S.W.2d 625, 627↩ (Ky. 1982).
13. Hall v. Commissioner,T.C. Memo. 1982-605↩.