Barbara Marie **DRAKE**, Appellant,

v.

Werter Lewis **DRAKE**, Appellee.

Werter Lewis **DRAKE**, Cross–Appellant,

v.

Barbara Marie **DRAKE** and Stephen C. Sanders, Cross–Appellee.

Nos. 89–CA–1731–MR, 89–CA–1761–MR.

Court of Appeals of Kentucky.

Jan. 25, 1991.

Discretionary Review Denied by Supreme Court June 26, 1991.

Stephen C. Sanders, Murray, for appellant/cross-appellee.

Harold T. Hurt, Vicki R. Jones, Murray, for appellee/cross-appellant.

Before GUDGEL, HOWARD and MILLER, JJ.

HOWARD, Judge.

In this domestic relations case, a wife appeals a judgment of the Calloway Circuit Court with regard to valuation and division of marital property, maintenance, and the premature dissolution of marriage. The husband files a cross-appeal concerning the award of attorney's fees and costs, valuation of marital assets, and maintenance.

The appellant/cross-appellee, Barbara Marie Drake, and the appellee/cross-appellant, Werter Lewis Drake, were married on November 25, 1966. Lewis had a degree in chemical engineering and worked in Ashland, Kentucky. Barbara completed all of her requirements for a degree in elementary education except for practice teaching. The couple moved to Calvert City, Kentucky, in 1970. Meanwhile, the couple had two children.

In 1973, Lewis attended Murray State University taking pre-med courses. Barbara obtained her teacher's certificate and began teaching in Murray. The couple moved to Lexington, Kentucky, after Lewis was accepted by the University of Kentucky School of Medicine. Lewis received his medical degree in 1980, and completed a residency in obstetrics and gynecology in 1984. During this period, Barbara taught

and became tenured in the Fayette County School system.

During this period in Lexington, Barbara earned a total of about $120,248. Lewis or his parents contributed to the marriage during this time about $176,240. The family then moved back to Murray and Lewis began working at the Murray Women's Clinic. Later, Lewis became a partner in the clinic. Barbara did not return to teaching, although she received a master's degree and had completed some 30 hours of credit beyond that level.

In 1985, the Drakes purchased a home in Murray for $67,500. Lewis apparently never moved in and, on November 11, 1986, he filed a petition for dissolution of marriage.

For an unexplained reason, the summons was not issued until January 12, 1987, and process was served on January 15, 1987. Barbara filed a response and counter-petition on March 6, 1987. The trial court issued a decree of dissolution on recommendation of the special commissioner on May 14, 1987.

On August 20, 1987, Barbara was awarded temporary maintenance of $1800 a month plus about $1000 more for the monthly mortgage payment, taxes and insurance on the marital residence.

The marital property was divided equally. Both parties disputed the valuation of some of these assets. Lewis was ordered to pay Barbara maintenance in the amount of $3500 per month for the first year and $2500 per month for the next 16 years. The amount Lewis paid to reduce the mortgage on the marital residence after the divorce decree until the final hearing was added to his equity. The trial court rejected Barbara's claim that the decree dissolving the marriage was entered prematurely. The trial court ordered Lewis to pay costs and 90% of Barbara's attorney's fees.

■ The first issue Barbara raises concerns the equity in the marital residence. Barbara argues that the mortgage payments Lewis made were temporary maintenance to provide housing and thus should not have been credited to him.

In *Gibson v. Gibson*, Ky.App., 597 S.W.2d 622 (1980), the husband was ordered to pay the taxes, insurance and mortgage installments on the marital residence during the occupancy of the wife until their youngest child reached 18, and then the home would be sold. This Court reasoned that payment of the mortgage would result in an increase in the husband's equity in the home. We held then that the husband is entitled to reimbursement to the extent the mortgage payments reduced the principal indebtedness.

The instant case and *Gibson, supra*, are nearly identical. In both cases, the husband was ordered to make the mortgage payments on the marital residence where the wife resided following entry of the divorce decree. Once the parties are divorced, the payments which reduce the indebtedness on the mortgage increase the husband's equity in the residence, not the marital equity. Thus, it would be unfair not to offset the mortgage reduction paid by the husband.

Both parties raise issues concerning the valuation of Lewis's interest in a professional practice. Barbara contends that the trial court erred by failing to assign any value to goodwill. Lewis argues in his cross-appeal that the trial court erred in not assigning to his interest in the business the value as determined by the buy-sell agreement.

Lewis owned a 25% interest in Murray Women's Clinic. In August of 1985, Lewis paid $19,200 for this interest. The amount of the purchase price was based on the equity in the property and other assets of the corporation as valued in accordance with the buy-sell agreement. The buy-sell agreement provided that if Lewis wanted to leave, he would have to sell his interest back to the corporation for a value to be determined annually. The value of Lewis's interest on May 14, 1987, based on that agreement, was $22,560. Lewis maintains that this value should have been used by the trial court.

In arriving at a value of Lewis's interest, Dr. Mackin considered such items as accounts receivable, inventory, cash and in-

tangible assets, i.e., goodwill. Dr. Mackin initially assigned a value of $136,643 to the tangible assets and $50,000 to goodwill. But on cross-examination, Dr. Mackin later conceded the tangible assets had a value of approximately $100,000.

The $100,000 value was placed on Lewis's business interest by the trial commissioner in accordance with Dr. Mackin's testimony. The trial commissioner found that the buy-sell agreement established artificially low values for the shares. The trial commissioner further found that goodwill is not an asset of a public service corporation.

Exceptions on these issues were made to and considered by the trial court and were rejected. Concerning goodwill, the trial court reasoned that because Lewis's average salary was only marginally above the national average, no goodwill value was warranted. The trial court also indicated that goodwill in a professional practice should not be awarded when maintenance is also awarded.

■ Buy-sell agreements are enforceable against parties. *Taylor's Administrator v. Taylor,* Ky., 301 S.W.2d 579 (1957); *Krebs v. McDonald's Ex'x,* Ky., 266 S.W.2d 87 (1953). But whether a buy-sell agreement is binding on a spouse in a dissolution action has not been answered in Kentucky.

It appears the majority position on this issue is that a buy-sell agreement for a closely held corporation which sets or provides a method for setting value on its shares for purposes of distribution is not binding, rather it is to be weighed with other factors in determining value. *Bettinger v. Bettinger,* 396 S.E.2d 709 (W.Va. 1990); *Amodio v. Amodio,* 70 N.Y.2d 5, 516 N.Y.S.2d 923, 509 N.E.2d 936 (1987); *Bowen v. Bowen,* 96 N.J. 36, 473 A.2d 73 (1984); *Stearns v. Stearns,* 4 Conn.App. 323, 494 A.2d 595 (1985); *Arneson v. Arneson,* 120 Wis.2d 236, 355 N.W.2d 16 (App. 1984). We think that the majority position is sound because that approach would produce a value closer to what one could receive in a free and fair market.

Some of the cases cited to support Lewis's position such as *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983), are in his favor, but we believe are not the better view. Others, such as *Scalchunes v. Scalchunes,* 134 A.D.2d 337, 520 N.Y.S.2d 812 (1987), are distinguishable. The court in *Scalchunes, supra,* only held that where there is no other evidence of the value of stock except for the amount calculated in accordance with the buy-sell agreement, that value is conclusive. In the case at bar, there was additional evidence.

■ The question of whether goodwill can be considered as an asset in valuing a closely held corporation in a dissolution action was thoroughly discussed in *Clark v. Clark,* Ky.App., 782 S.W.2d 56 (1990), and *Heller v. Heller,* Ky.App., 672 S.W.2d 945 (1984). This Court held in these cases that goodwill should be considered. *Clark, supra,* is factually similar in that it involved a physician's one-third interest in a medical practice.

The trial court cited *Kimbrough v. Kimbrough,* 228 Neb. 358, 422 N.W.2d 556 (1988), in which it was held that goodwill in a professional practice was an indication of probable earning capacity and thus, should not be included in valuation of the practice, when the maintenance award is also based on earning capacity. But the most common method for valuing goodwill, and the one used by Dr. Mackin in this case, the capitalization of excess earnings, is basically "the amount the earnings of the professional spouse exceed those which would have been earned by a professional with similar education, experience, and skill as an employee in the same general area." *Clark, supra,* at 59. But as we noted in *Clark, supra,* this method looks at past earnings, not future ones. We also do not believe that the $23,000 difference between Lewis's earnings and the national norm of $137,000 is marginal. Thus, the trial court erred in refusing to assign a value to the goodwill of Lewis's interest in the corporation.

■ Barbara next contends that the trial court awarded her an insufficient amount as maintenance.

Barbara desires a maintenance award of $5000 a month. This figure comes from

Lewis's testimony about how much he would receive in disability insurance should he become disabled. Barbara also seeks a further award of $691.50 for a premium payment for a life insurance policy on Lewis's life.

In 1987, Lewis earned about $164,000. The maintenance payments to Barbara are $30,000. In addition, Barbara has some teacher's retirement and was awarded about $30,000 in marital cash and the marital home. Barbara's position will improve somewhat on remand because of our holding on the valuation of the practice. Barbara claims that she has been unable to secure employment, other than infrequent substitute teaching.

Barbara relies much upon *Lovett v. Lovett*, Ky., 688 S.W.2d 329 (1985). *Lovett*, *supra*, is similar factually to the case at bar. For example, the husband was a physician and the wife had a teacher's certificate. The wife in *Lovett*, *supra*, was awarded maintenance of $1,750 per month for 10 years. The trial court stated that the higher maintenance was justified in the case at bar because (1) the duration of marriage was longer than in *Lovett*, *supra*, (2) the spouse seeking maintenance was older, and (3) the spouse paying maintenance had a greater income.

The question of maintenance is a matter of discretion and will not be disturbed absent abuse. *Clark*, *supra; Lovett*, *supra*. It is difficult for us to see how the trial court abused its discretion. *Lovett*, *supra*, is really of no help to Barbara, particularly since she received a greater amount of maintenance. If Barbara desires to obtain insurance on Lewis's life, she has adequate funds to do so.

Lewis asserts in his cross-appeal that the maintenance award is too large and is too long in duration.

Lewis neglects to mention the fact that the maintenance is deductible from his federal tax. *See Clark*, *supra*. It is true that Barbara already has sufficient training for employment. But we have already mentioned Barbara's difficulties in obtaining employment. If Barbara was able to secure full-time employment, it is very doubt-

ful her income would approach that of Lewis's during the later years of their marriage. The standard of living established during the marriage is a factor to be considered in awarding maintenance. KRS 403.200(2)(c). We reiterate that the trial court did not abuse its discretion on the maintenance question.

■ Barbara also contends that the decree of dissolution was prematurely granted.

A hearing was held on May 12, 1987, before the trial commissioner. The commissioner entered a report on that date requesting the trial court to enter a decree of dissolution. The report stated "[t]he parties waived the ten (10) day waiting period." This waiting period apparently refers to the 10 days allowed under CR 53.06(2) for the filing of exceptions. The words "agreed and final" appeared on the report in the commissioner's handwriting. On May 14, 1987, the trial court entered the decree.

Barbara maintains that there are procedural irregularities concerning the May 12, 1987 commissioner's report. Barbara filed a pro se motion on May 21, 1987, seeking to have the decree set aside claiming that she was not aware the marriage was being dissolved.

In her brief, Barbara makes much of the fact that the report does not show "have seen" or other notation indicating that her attorney had seen it. But the transcript of that hearing clearly shows that the attorney was aware the marriage was being dissolved at that time and the other issues were being reserved. Barbara was also present at the hearing. Consequently, we cannot believe that Barbara was misled by the report and subsequent decree.

We also note that under KRS 22A.020(3), this Court has no jurisdiction for "review by appeal or writ of certiorari from that portion of a final judgment, order or decree of a circuit court dissolving a marriage." The issue is then not properly before us.

■ Lewis contends that the court erred in assessing him court costs and most of Barbara's attorney's fees.

The assessment of court costs and the award of attorney's fees are entirely within

the trial court's discretion. *Browning v. Browning*, Ky.App., 551 S.W.2d 823 (1977). It has been held an abuse of discretion to award costs and attorney's fees against one party when the parties' financial resources are roughly equal. *Drake v. Drake*, Ky.App., 721 S.W.2d 728 (1986); *Lampton v. Lampton*, Ky. App., 721 S.W.2d 736 (1986). *See* KRS 403.220. We see no abuse of discretion here because Lewis's financial resources exceed Barbara's.

The judgment is affirmed in part and reversed and remanded with directions in part on direct appeal and affirmed on cross-appeal.

GUDGEL, J., concurs.

MILLER, J., concurs in part and dissents in part on appeal and concurs on cross-appeal.

MILLER, J., concurring in part and dissenting in part.

I would affirm the judgment of the circuit court on both the appeal and cross-appeal.