Anna Mae TUTOR, Appellant,

v.

Nancy BINGHAM, Appellee.

Court of Appeals of Tennessee,
Western Section.

Oct. 7. 1976.

Certiorari Denied by Supreme Court
Jan. 17, 1977.

J. Frank Hall, Memphis, for appellant.

Fred P. Wilson and Gary K. Smith, Memphis, for appellee.

NEARN, Judge.

On August 12, 1973, John C. Tutor II, at age seventeen, was killed while operating a motorcycle. His motorcycle was in a collision with a Volkswagen automobile driven by Nancy Bingham. Suit was filed by the deceased's mother, Anna Mae Tutor, for her son's wrongful death. The case went to the jury which body returned a verdict for the defendant and plaintiff has appealed from that verdict with three Assignments of Error.

The first Assignment of Error is directed to the Trial Court's refusal to sustain

counsel for plaintiff's objection to testimony regarding plaintiff's sexual conduct. On cross-examination over the objection of counsel for plaintiff, defense counsel was permitted to question Mrs. Tutor regarding her divorce from her husband and the fact that after the divorce and without legal sanction, she returned to the conjugal bed and bore him two children (neither being the deceased). Such testimony has absolutely nothing to do with this cause of action as this cause of action is actually the cause of action of John C. Tutor, II, for his wrongful death and is only incidentally brought by Mrs. Tutor in his stead. It is not the cause of action of Mrs. Tutor. *Jones v. Black* (1976 Tenn.) 539 S.W.2d 123; *Phelps v. Magnavox* (1972 Tenn.App., W.S.) 497 S.W.2d 898. The "worthiness" or "unworthiness" of the nominal plaintiff and ultimate beneficiary is totally unrelated to this type of action as it is "the right of action which the deceased would have had, had he survived." *Jones v. Black*, supra.

Counsel for appellee argues that such cross-examination was admissible on the "credibility" theory or on the theory that he had the right to bring out the "atmosphere" the deceased was raised in as it would have bearing on the deceased's capacity for work and personal habits as to sobriety and industry. The argument is totally without merit. Mrs. Tutor was not a witness to the accident and did not testify about it. She testified to the basic facts that her boy was alive, is now dead, had a job and was a dutiful son. None of these points were in any manner contested. The credibility of Mrs. Tutor was a non-issue. We fail to see how the conduct of Mrs. Tutor has anything to do with the *deceased's* capacity for work and personal habits.

The only reason we can see for the admission of such testimony was to prejudice the minds of the jurors. See *Phelps v. Magnavox*, supra. The intentional injection of testimony regarding the sexual conduct of the party in whose name the suit is brought, which testimony bears no semblance of a legitimate basis for admission in

a case, will not be tolerated. We hold that in this case the error should be considered as reversible. The Assignment of Error is sustained.

■ The fatal injury took place on Getwell Road in Memphis. The street has two lanes for southbound traffic and a center or third lane for left turning traffic and two lanes for northbound traffic. On the morning in question a portion of the curb lane for southbound traffic was blocked by construction work barricades. Plaintiff's witness testified that the witness was in the southbound lane which lies between the curb lane and the left turn lane, that the deceased was headed south on his motorcycle in the curb lane slightly ahead of the witness. That the defendant, driving a Volkswagen, passed the witness by using the left turn lane, cut in front of the witness and attempted a right turn in a private drive immediately to the south of one of the barricades and directly in front of the deceased. The proof shows that the deceased's motorcycle struck the Volkswagen when both were in the curb lane. The defendant testified that she did not pass the plaintiff's witness as testified to but was proceeding southwardly in the lane next to the curb lane because of the barricades and that she turned on her right turn signals, and began to move over into that portion of the curb lane not blocked. That she proceeded in this manner and when she started to turn into the private drive was struck by the motorcycle driven by the deceased which she had never before seen. It was the defendant's theory that automobile traffic could not proceed in the approximately five feet lying between the barricade and the lane line for the other southbound lane and that deceased was attempting to pass her on the right from a position where he had no business being, all while defendant's turn indicators were flashing.

The Trial Judge refused to charge the following special request No. 6:

"The Court charges you that if a right-hand turn is made, without observing traffic to the rear of the turning vehicle,

such a turn violates T.C.A. 59–842 and is negligence per se, or in and of itself."

This special request to charge is contained in the Court's general charge where the Trial Judge advised the jury that plaintiff contended that defendant had violated T.C.A. 59–842 and in a later portion of the charge he instructed the jury that a violation of a statute or ordinance was negligence per se. The plaintiff was not entitled to have it repeated and the Assignment of Error is without merit.

■ Plaintiff's special request No. 7 was as follows:

"The Court charges you that a motorcycle in and of itself, absent of other factors is not a dangerous instrumentality, and negligence is not to be inferred from the mere use of a motorcycle as a means of transportation."

We believe plaintiff was entitled to have this charge submitted to the jury as it is certainly the law. *Duncan v. Ferrell* (1968 W.S.) 58 Tenn.App. 133, 427 S.W.2d 36. In addition, because of the fact that an automobile could not be driven in the right lane because of the barricades, the jury was entitled to an instruction that negligence is not implied from the mere use of a motorcycle.

The first and third Assignments of Error are sustained and the cause is remanded for a new trial.

Costs of the appeal will be adjudged against the appellee.

Done at Jackson in the two hundred and first year of our Independence and in the one hundred-eighty-first year of our Statehood.

CARNEY, P. J., and MATHERNE, J., concur.