Elizabeth BOWERS and Norma Jean Boals, Plaintiffs-Appellants,

v.

William J. THOMPSON, Defendant-Appellee.

Court of Appeals of Tennessee, Western Section, at Nashville.

Nov. 27, 1984.

Application for Permission to Appeal Denied April 1, 1985.

Joseph L. Lackey, Jr., Nashville, for plaintiffs-appellants.

Philip C. Kelly, Gallatin, for defendant-appellee.

CRAWFORD, Judge.

Plaintiffs, Elizabeth Bowers and Norma Jean Boals, appeal from the judgment of the trial court on a jury verdict for the defendant, William J. Thompson. The case arose as the result of an accident involving an automobile driven by Bowers and a pickup type truck driven by Thompson. Although the case was tried with two companion cases resulting in verdicts for defendants in all cases, the only parties involved in this appeal are plaintiffs-appellants Bowers, a minor 17 years of age at the time of the accident, her mother, Boals, who was responsible for Bowers' medical bills, and defendant, Thompson. However, as hereinafter noted, the admission of evidence by the trial court will be governed by the trial status at that time.

The record reveals that at the time of the accident, Bowers was driving a car owned by her boyfriend, Jesse R. Oatsvall, with his permission and was leaving a private driveway in a rural area to enter a public highway. As she pulled onto the highway, her vehicle was struck by the pickup truck owned and driven by Thompson. The suit by Bowers and Boals is for damages sustained by them for the personal injuries and medical expenses incurred.

Plaintiffs have presented three issues for review which we shall discuss separately.

## ISSUE NO. 1

Did the trial court err in refusing to strike as an affirmative defense the failure of the plaintiff to have a Tennessee driver's license and err in not charging the jury to disregard the testimony as it pertains to the failure to have a Tennessee driver's license?

■ Plaintiffs assert that proof concerning Bower's lacking a driver's license is inadmissible on the issue of her contributory negligence. We have no quarrel with plaintiffs' assertion in this regard; however, plaintiffs fail to recognize that this case was tried with two other cases, one of which was a suit by William Thompson and wife Eva Thompson against Jesse R. Oatsvall, Bowers and Boals. In that case, in addition to the alleged liability of Oatsvall on the theory of respondeat superior, Thompson asserted that Oatsvall was negligent in his entrustment of the vehicle to Bowers, alleging in substance that she was incompetent as a driver and that she had failed the driver's license test on two previous occasions. The introduction of proof in support of these allegations was material and relevant on the issue created by the allegations of Thompson and was, therefore, properly admitted by the trial court.

■ Plaintiffs assert in the alternative that the trial court was in error in not instructing the jury to disregard the proof. Nowhere in the record do we find a request by plaintiff for an instruction directing the jury to consider this evidence for the limited purpose of its relation to the issue created by Thompson against Oatsvall. In the absence of such a special request, the trial court should not be held in error. *Cohen v. Cook*, 62 Tenn.App. 292, 462 S.W.2d 502 (1969); *Wallace v. Knoxville's Community Development Corp.*, 568 S.W.2d 107 (Tenn.App.1978). For these reasons, we find the first issue presented by plaintiffs to be without merit.

## ISSUE NO. 2

Did the trial court err in allowing testimony that the plaintiff had, at one time in her life, smoked marijuana cigarettes and had drunk alcohol when there was no proof introduced that any of these events took place at or about the time of the accident or were in any way related to the cause or the accident?

The record of the cross-examination of Bowers reveals that the testimony concerning the use of marijuana and the use of alcohol were two separate incidents in the trial of the case and should be so treated in our consideration. Although the transcript dealing with this issue is quite lengthy, we quote a major portion thereof as it pertains to the evidence complained of. As to the alcohol:

Q. Now, you stated that you were concerned about your condition after you got out of the hospital.

A. Yes.

Q. And that is correct, is it not?

A. Uh-huh.

Q. But even with that concern, you drank, did you not, intoxicants?

A. I did drink. I didn't drink all the time. I had drank occasionally. I had done that. And it was the fact that I knew that I was not—I could not do that. I'm not supposed to do that. I don't drink now because it could kill me because I don't have a spleen. And it was hard for me to accept that, that I no longer have a spleen. I can't do the—

Q. Well, my question really is this and I don't want to cut you off, Randy Oatsvall knew you drank, did he not?

A. Yes, he did.

Q. He let you have the car—I'm not picking on you—but he knew that you drank, didn't he?

MR. LACKEY: If the Court please, I'm going to object again. If Mr. Kelly is saying this woman was under the influence of alcohol or anything when this accident happened, why didn't he ask her that question.

MR. FRED KELLY: All right.

THE COURT: Well, I think that you need to connect the relevancy of these questions to the accident.

MR. FRED KELLY: What I'm trying to do is get on Mr. Oatsvall's cause of action. All right.

MR. LACKEY: Your Honor, please, I think Mr. Kelly was trying to get in the minds of this jury this girl drinks and she smokes marijuana, and try to get them out of the fact that she was involved in a serious automobile accident.

THE COURT: All right.

MR. FRED KELLY: I'm going to back clear off. We're losing sight of the—

THE COURT: Ask the question to see whether or not these questions have any bearing on the issues of liability.

MR. FRED KELLY: Right. Now, I'm going to back all away from this with one other question.

Q. (By Mr. Kelly) Do you remember enough about the evening before the accident to tell this Court and Jury whether or not you had been drinking to such an extent that it would have lasted until the next day?

A. I do not remember the evening, but I do know I did not drink because I had went over to Randy's house for the fact that I was going to the doctor the next—I had an appointment with the dentist, or I had—I don't remember. I had the dentist appointment. That's what I was there for.

■ Although the trial court apparently did not consider the testimony about alcohol as relating to plaintiff's physical condition after the accident, the record indicates the initial thrust of the cross-examination was in that regard. Bowers candidly admitted that because of the injuries sustained and aggravation to be expected she was not to use alcoholic beverages. She nevertheless admitted partaking thereof. We do not deem it necessary to cite authorities on the proposition that a plaintiff must attempt to minimize her damages. The testimony elicited on cross-examination

concerned her post accident use of alcohol. Perhaps defendant's counsel strayed a bit too far in the remainder of his cross examination concerning the use of alcohol, but this error *standing alone* probably did not influence the jury.

As to the marijuana we again quote from the trial record:

Q. Do you remember what you had done the night before [the accident]?

A. No, I don't. All I know is that I did stay there. I did spend the night.

Q. Do you know what you did the evening before is what I'm getting at?

A. No, I don't.

Q. Well, you very candidly said whether this evening, I suppose—now, I really don't know, but you had smoked marijuana, you were a marijuana smoker.

A. I had tried it before.

MR. LACKEY: I object to that.

THE COURT: What is the basis of your objection?

MR. LACKEY: I don't know whether she has smoked marijuana or not or did or didn't but I don't know what relevancy it has to this lawsuit and this accident. If he is claiming she was under the influence of marijuana at the time of this accident, I think he needs to ask that question.

MR. FRED KELLY: That is my question that I'm going to ask.

THE COURT: I'm going to overrule the objection.

MR. LACKEY: Excuse me just one minute. Could we approach the bench?

THE COURT: Let's let the Jury step to the Jury room minute.

\*    \*    \*    \*    \*    \*

MR. LACKEY: If the Court please, that question is based on a question that Mr. Kelly asked at this lady's discovery deposition. And he said—he started out with this premise, I think he used the word candidly, or you very openly admitted, that you smoked marijuana on the evening before this incident. No, I think he said on this eve-

ning or another evening before this incident. There's no excuse, in my opinion, for that to be injected into this lawsuit except in the form of question: Were you under the influence of marijuana at the time of this accident, or had you smoked marijuana at a time with respect to this accident that it would have affected your driving in any way? And we would respectfully submit that there is—the proof shows this lady got up in the morning at four o'clock, came home, went back to sleep, got up, and left to go to a friend's house.

MR. FRED KELLY: I want to ask the question in that form if you want to cut this short.

MR. LACKEY: Well, I understand now. And he's going to ask the question in that form, if the Court please, but he's already put in the minds of the Jury this lady's admission at a previous date of smoking marijuana. And that admission of her smoking marijuana at a previous date has absolutely nothing to do with this lawsuit, but it does get in the minds of this Jury that she has smoked marijuana. And in my opinion, it was done to arise passion, prejudice, and caprice in the minds of the Jury, and I think it's entitled to be a mistrial and we need to start all over with another Jury and let him ask the question properly.

MR. FRED KELLY: Well, now suppose she answers the question yes?

MR. LACKEY: Well, you should have asked that question first, in my opinion. And if she did, then I wouldn't have any grounds for this objection.

\*    \*    \*    \*    \*    \*

THE COURT: I'm going to overrule the motion for a mistrial. I'm going to allow Mrs. Colley [Bowers] to finish her answer. I'll let her give any answer she wants to and explanation.

MR. LACKEY: Can she do it outside the presence of the Jury so I'll know what the answer is going to be?

MR. KELLY: What's the reason for that on cross examination?

MR. LACKEY: Well, I withdraw that request.

THE COURT: Are you all ready? You understand, Mrs. Colley [Bowers], you have a right to explain. You were asked the question about smoking marijuana.

WITNESS: Yes.

MR. FRED KELLY: And may I make a suggestion, so I will not repeat the question, so I will not push too much other than to get the answer to what I asked, if she would just give the answer without me repeating the question. I think the witness knows the question.

THE COURT: I think you understand the question. And you can tell—you can explain to the Jury your response, your answer to that question, when, where you had smoked marijuana, if you want to; whether or not it had anything to do with this accident or not whether it had anything to do, but whether you smoked any marijuana at the time of this accident. Do you understand what I'm saying?

WITNESS: Uh-huh. Do you want me to explain it?

THE COURT: I'm going to give you an opportunity to answer fully that question.

WITNESS: Okay. I had tried it before when we were in school, like all the other kids in school, but I do not do drugs. I do not.

THE COURT: All right.

MR. LACKEY: For purposes of the record, if the Court please, I would like to renew my objection to the question and the—there's no need objecting to the answer, I objected to the question.

THE COURT: All right. I'll overrule it. This is cross examination and for that reason I'll overrule it.

MR. LACKEY: I would like to state into the record the grounds are that based on—well, it's obvious that there's no relation, in my opinion, to the timing.

(Whereupon, the Jury returned to the Courtroom.)

THE COURT: Mrs. Colley [Bowers] your answer was interrupted, and you have the right and opportunity to fully answer the question asked.

WITNESS: Okay. The answer I had tried it before when I was in school. I had tried it that—I think every child in school had tried it once before. Just once before, that is all that I ever did. I tried it once.

MR. FRED KELLY: Your Honor, do I have a right now to ask questions? Do I have a right now to pursue some answers in a deposition along this same line for purposes of impeachment?

THE COURT: This is cross examination and you have a right to ask the questions subject to objection.

MR. FRED KELLY: I understand that I do, but the objection was strenuously made and I don't want to do improper.

THE COURT: All right.

Q. (By Mr. Fred Kelly) I will ask you if you had not stated that you have used marijuana on more than one occasion?

A. Had I used it on more than one?

Q. Yes.

A. Yes.

Q. As many as four or five times?

A. Not to—well, it was just something that everybody had tried and I tried it.

Q. All right. Let's leave that....

■ Defendant asserts that Bower's cross-examination testimony concerning her drug use was relevant to the issues in this case. We note, however, that neither Thompson's answer to plaintiff's complaint, nor Thompson's complaint filed in the companion case alleges any incapacity at the time of the accident resulting from Bower's use of drugs or alcohol. We also note there is no allegation of violation of the statutory provisions dealing with driving

under the influence of narcotics or alcohol. As the transcript indicates, the trial court overruled the objection to the admission of this evidence. Although Bowers was allowed to explain her answers, we cannot escape the fact that the jury heard without limiting restrictions from the trial judge that Bowers had used marijuana on more than one occasion in her lifetime. In this regard, the case at bar is not unlike *Tutor v. Bingham,* 545 S.W.2d 944 (Tenn.App. 1976), in which Judge Nearn held that the admission of testimony regarding plaintiff's sexual conduct was unrelated to the issues in a wrongful death action, and was, therefore, reversible error. In the absence of any allegations on the part of Thompson that plaintiff was under the influence of narcotics at the time of the accident, we can only speculate as to the intent of defendant's counsel in introducing the evidence complained of.

For further support of our position that plaintiff's previous drug use was unrelated to the issues in this case, we cite *Martin v. State,* 584 S.W.2d 830 (Tenn.Crim.App. 1979). In *Martin,* the court considered an attempt to introduce testimony about the use of marijuana by the victim of the crime and in affirming the disallowance of the testimony by the trial judge, the court said: "There is no connection between the use or possession of marijuana and the veracity of a witness. Such use, even if established, would not have reflected on the victim's truthfulness or untruthfulness." (Citations omitted). *Id.* at 834.

█ In the case at bar, the line of questioning utilized by defendant's counsel was objectionable and the trial court was in error in overruling the objection. Having made this determination, we must now go one step further as required by T.R.A.P. 36(b) and determine the magnitude of this error. T.R.A.P. 36(b) provides:

*Effect of Error.* A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Under the facts of this case it is most difficult for this court to determine whether the introduction of this evidence "more probably than not affected the judgment," although we do feel that the allowance of this error to go unchallenged "would result in prejudice to the judicial process." In any event, we recognize that counsel for the defendant must have thought that the introduction of this testimony would affect the judgment of the jury in its deliberation or such testimony would not have been introduced. We say this bearing in mind that defendant had previously deposed the plaintiff and knew that her use of marijuana was not relevant to the issues in this case. To inject this fact into the case obviously evidences the belief by defendant's counsel that it would have some effect on the decision of the jury. Consequently, the judgment of the trial court should be reversed and this cause remanded for a new trial.

Since we are remanding this case for trial, we will consider the final issue presented for review which is:

### ISSUE NO. 3

Did the trial court err in refusing to charge the reckless driving statute and refusing to charge the law of gross negligence?

█ The record reveals that plaintiff did not submit a written request for instruction on gross negligence which was refused by the trial court, and therefore, this court has no way of knowing the content of plaintiff's requested charge. The trial court cannot be held in error for an incomplete charge in the absence of such a special request. *Cohen v. Cook,* 62 Tenn.App. 292, 309–10, 462 S.W.2d 502, 510 (1969); *Wallace v. Knoxville's Community Development Corp.,* 568 S.W.2d 107 (Tenn.App. 1978).

█ Plaintiffs also complain about the refusal of the court to charge the reckless driving statute which is:

55–10–205. Reckless driving.—(a) Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

This statute makes willful and wanton disregard for the safety of persons or property an essential element of the offense of reckless driving. *See Burgess v. State*, 212 Tenn. 315, 369 S.W.2d 731 (1963).

In *State v. Wilkins*, 654 S.W.2d 678 (Tenn.1983), the Supreme Court considered the issue of whether the conviction of reckless driving can be maintained on speed alone when there is evidence that the defendant's speed was approximately 120 m.p.h. In holding that such a conviction could be maintained under these circumstances, Justice Drowota speaking for the court said:

> Willful and wanton disregard for another's safety is a *factual question* properly determined from all the circumstances. It exceeds negligence in that the actor willfully breaches a duty. While 20 miles per hour without more is not "willful and wanton," we do not think such can be said for all speeds. Indeed, we think it is within the *discretion of the finder of fact* to consider that a motor vehicle's speed can be so fast as to constitute willful and wanton disregard for persons or property, be it the person and property of the driver or others on the road or in the area. (Emphasis supplied). *Id.* at 680.

There is proof in the record from which the jury could find that Thompson was exceeding the speed limit. Therefore, as required by Wilkins, "it is within the discretion of the finder of fact to consider that a motor vehicle's speed can be so fast as to constitute willful and wanton disregard for persons or property ..." Consequently, the Court under appropriate instruction should have submitted this issue to the jury, but it cannot be held in error for failure to do so in the case at bar because plaintiff did not submit a special request for instruction. The trial court cannot be held in error in the absence of such a special request. *Cohen v. Cook*, 462 S.W.2d at 510, *Wallace v. Knoxville's Community Development Corp.*, 568 S.W.2d at 112–13.

The judgment of the trial court is reversed and this case is remanded for a new trial consistent with this opinion. Costs are adjudged against the appellee.

NEARN, P.J. W.S., and TOMLIN, J., concur.