# Supreme Court of Kentucky FINAL

2007-SC-000190-DGE

2007-SC-000207-DGE

DATE 5/21/09 *Kelly Klaber*
*D.C.*

JULIE ANNE GASKILL          APPELLANT/APPELLEE

ON REVIEW FROM COURT OF APPEALS

V.        CASE NO. 2005-CA-002088-MR

WARREN CIRCUIT COURT NO. 03-CI-01652

JON KEVIN ROBBINS          APPELLEE/APPELLANT

## OPINION OF THE COURT BY JUSTICE NOBLE

## AFFIRMING

The questions presented in this appeal are whether the goodwill of a closely held or sole proprietorship business can have both personal and enterprise values, and whether the trial court improperly assumed that it must make a 50-50 division of the marital assets. Recognizing that this Opinion is a departure from previous law, this Court affirms the Court of Appeals as to its ruling on goodwill, but on other grounds; the trial court is affirmed on its ruling regarding division of the marital estate, as it did not abuse its discretion.

## I. Background

Appellant/Appellee, Julie Anne Gaskill, is the petitioner in a divorce and custody proceeding filed in Warren Family Court on October 14, 2003. The respondent, John Kevin Robbins, Appellee/Appellant, filed a Verified Response on October 24, 2003, denying all the nonfactual allegations of the petition,

including a denial that the marriage was irretrievably broken, and asked the trial court to order a reconciliation conference. A protracted, contested process ensued. Having heard several preliminary motions, by the time the trial court heard the case in an eight day trial in late 2004, it was very familiar with the parties and their circumstances.

There were two dominant areas of dispute at trial: custody of the parties' minor son, and valuation of Gaskill's practice as an oral and maxillofacial surgeon. The trial court awarded sole custody to the father, with standard visitation to the mother, and ordered child support. As to the division of marital property, the trial court determined that it should be divided approximately 50-50 between the parties. Gaskill had a very successful practice, and Robbins worked as a salaried employee with several businesses throughout the marriage, so that at the time of trial, the parties had amassed a marital estate of over four million dollars, including a value of $669,075 for the practice. A large portion of this was in various cash accounts, but the single biggest asset in contention was the oral surgery practice.

There was no dispute that Gaskill was highly skilled and earned roughly 90% of the income received during the marriage. The testimony also indicated that she was extremely hard working, and managed her practice with frugality. The practice consisted of her as the sole oral surgeon, with office staff. She was also primarily responsible for management of the office, though Robbins did take care of some paper work such as paying bills, and he often brought supplies to the office. Gaskill alone was responsible for patient acquisition. Robbins testified that he helped her set up the office initially, and was generally

supportive. Since the practice in Bowling Green was established after the marriage, there is no question as to its marital character.[1]

At trial, each party presented experts on valuation of the practice. Gaskill's accountant, Steve Wheeler, who collected data from the business records and actually talked with personnel at the practice location, did a detailed report laying out all of the financial information, a discussion of various accounting methods, and definitions of frequently used accounting terms. After testifying about why various valuation methods were not applicable due to the unique nature of this sole proprietorship, he settled on an asset-based analysis. He chose this approach because the business was not actually to be liquidated, no similar sales of a reasonably similar business were available, and there was no previous transaction in this business with which to compare. He testified at trial that the practice had a value of $221,610, which he later adjusted downward to make the value more current. Wheeler assigned a value of zero to goodwill because Gaskill's role in the business amounted to a "non-marketable controlling interest." To illustrate, he asked, "Why would a purchaser pay more than fair market value of the tangibles if Dr. Gaskill can take her patients, go down the hall, and set up a practice?"

Robbins's expert, Richard Callahan, did not independently collect data and did not visit the practice to interview staff or view the physical aspects and working procedures of the office, but instead used Wheeler's detailed data. He used four different methodologies to evaluate the business: capitalized

---

[1] Gaskill had previously maintained an office in nearby Russell County, and later moved the practice to Bowling Green.

earnings, excess earnings, adjusted balance sheet, and the market approach.

He calculated a value for the business under each method, then averaged the

four numbers to arrive at a value of $669,075, which included an assumed

non-compete agreement and goodwill. He specifically objected to one of

Wheeler's calculations doubling the wages of the employees to allow for the cost

of acquiring similarly trained personnel, arguing that a willing buyer could

utilize the same employees that Gaskill currently had. He testified that using

Wheeler's calculations on this item would reduce the practice's value by

$315,890.

The trial court accepted Callahan's view "to be more credible,"

particularly referencing the employee salary calculations, and fixed the value of

the practice at $669,075. However, the trial court primarily relied on the

premise that there is no legal authority for a distinction between personal and

enterprise goodwill in Kentucky law.

The total value of the marital property was determined, and the trial

court analyzed the requirements of KRS 403.190,[2] and found that the parties

---

[2] KRS 403.190, the disposition of property statute, provides:

(1) In a proceeding for dissolution of the marriage or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

4

contributed equally in obtaining the marital estate, to duties at home, and to

the raising of their son. The trial court also considered that at the time of the

---

    (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

(2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

    (a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

    (b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

    (c) Property acquired by a spouse after a decree of legal separation;

    (d) Property excluded by valid agreement of the parties; and

    (e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

(4) If the retirement benefits of one spouse are excepted from classification as marital property, or not considered as an economic circumstance during the division of marital property, then the retirement benefits of the other spouse shall also be excepted, or not considered, as the case may be. However, the level of exception provided to the spouse with the greater retirement benefit shall not exceed the level of exception provided to the other spouse. Retirement benefits, for the purposes of this subsection shall include retirement or disability allowances, accumulated contributions, or any other benefit of a retirement system or plan regulated by the Employees Retirement Income Security Act of 1974, or of a public retirement system administered by an agency of a state or local government, including deferred compensation plans created pursuant to KRS 18A.230 to 18A.275 or defined contribution or money purchase plans qualified under Section 401(a) of the Internal Revenue Code of 1954, as amended.

dissolution, Gaskill remained able to earn approximately 7.5 times the amount Robbins could, giving her a far greater ability to rebuild her estate. The trial court then found that "just proportions" required that the marital estate be divided equally, and ordered a 50-50 division of the marital property. The practice was assigned to Gaskill, as were a number of other non-liquid assets, and most of the cash was assigned to Robbins in order to equalize the distribution.

Gaskill appealed. The Court of Appeals reversed on the custody ruling because of hearsay evidence and failure to allow a proper witness, and remanded for a new trial on that issue. That issue has not been appealed to this Court.

The Court of Appeals also reversed on the goodwill evaluation because it believed the trial court was under the incorrect impression that goodwill in a business must be assigned a value greater than zero, and it recognized that not all businesses have goodwill, citing Clark v. Clark, 782 S.W. 2d 56 (Ky. App. 1990) and Heller v. Heller, 672 S. W. 2d 945 (Ky. App. 1984).

This Court granted discretionary review to consider the proper valuation of goodwill in the oral surgery practice, and the appropriateness of the proportional division of the marital estate.

## II. Analysis

### A. Valuation of Goodwill

The valuation of a business is complicated, often speculative or assumptive, and at best subjective. This is particularly true in a divorce case where the business is a professional practice with only one practitioner, clients

or patients come to the business to receive that particular person's direct services, the business is not actually being sold, and the success of the business depends upon the personal skill, work ethic, reputation, and habits of the practitioner.

Nonetheless, when a business is established during a marriage and is thus marital property, the trial court is required to fix a value and divide it between the spouses. To do this, a trial court must hear factual evidence, which generally will include expert testimony. If a court is to arrive at a fair market value of a business, often stated as what a willing buyer will pay a willing seller, the court must have the means to answer at least the following questions a willing buyer would ask:

1. What can be earned from the business over a reasonable period of time? This value must then be reduced to present value, and includes the concept of transferable goodwill.

2. What is the value of the hard assets? This includes real estate, equipment, client lists, cash accounts or anything else the business may own or control.

3. What is the value of the accounts receivable? This has a potential discount because all the accounts may not be collectible.

4. What is the value of the training of the personnel who will remain with the practice, or what is the cost to train new personnel?

5. What are the liabilities that will remain after the purchase? This includes personnel salaries, taxes, debt service, and other costs of doing business.

While some of these questions are comparatively easy to answer, some of them are complex and require application of accounting and business valuation methods. The concept of goodwill and how it may affect continuing profitability is one of the complex questions.

The question of how to value goodwill of a business has been a source of contention for many years, with trial courts left to decipher competing and frequently inconsistent theories and accounting practices into something meaningful. It is generally accepted in existing Kentucky law that goodwill is a factor to be considered in arriving at the value of a business, Heller, 672 S. W. 2d at 947-48, but whether goodwill can be divided between the business and the individual is a question of first impression for this Court.

Heller is the first in a line of Court of Appeals cases recognizing that at times a business can be sold for more than just the value of its assets. The idea is premised on the notion that the reputation of the business will draw customers, get them to return, and thus contribute to future profitability. Obviously, future business is of primary importance to a potential buyer. Heller's concept of goodwill has been applied in a line of cases that includes Clark v. Clark, 782 S.W.2d 56 (Ky. App. 1990), Drake v. Drake, 809 S.W.2d 710 (Ky. App. 1991), and Gomez v. Gomez, 168 S.W.3d 51 (Ky. App. 2005). This line of cases focuses on professional practices, and assumes that there is a buyer for the practice (in Heller, an accounting practice; in Clark, a share in a medical professional corporation; in Drake, an interest in a medical practice under a buy-sell agreement; and in Gomez, a hospital-based radiology practice). In order to evaluate the fair market value of the practice, everything

8

of value, including transferable goodwill, must be counted. None of these published cases recognize a distinction between personal and enterprise goodwill; however, they do not prohibit such an analysis. They merely establish that goodwill is a factor to be considered in valuation. This Court agrees with that conclusion.

In this case, Gaskill is the sole proprietor, or only practitioner, in the oral and maxillofacial surgery practice. Every patient of the practice is treated by her. Only she exercises the professional judgment and skill required to perform surgery on her patients. The evidence indicates that she has been a prudent and frugal office manager as well, a fact that Wheeler claimed was responsible for the large cash account of the business. Gaskill alone has performed the treatment in this practice for over thirteen years. Clearly, the practice is, in general, marital property, and therefore subject to division, but how are we to divide a person's reputation, skill and relationships? To what extent can a buyer of a business assume that his performance will equal that of the present owner? To what extent can he take on the seller's reputation in the community?

This Court has held that an advanced professional degree is not to be treated as marital property because it is personal to the holder and cannot be transferred to another. Lovett v. Lovett, 688 S.W.2d 329 (Ky. 1985). This is because the degree

> "does not have an exchange value or any objective transferable
> value on an open market. It is personal to the holder. It terminates
> on the death of the holder and is not inheritable. It cannot be
> assigned, sold, transferred, conveyed or pledged. An advanced
> degree is a cumulative product of many years of previous

9

education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property . . . [.]"

Id. at 331 (quoting Mahoney v. Mahoney, 442 A.2d 1062, 1066 (N.J. Super. 1982)).

In Heller, the Court of Appeals held that there was at least "limited marketability" of goodwill where practices "can be sold for more than the value of their fixtures and accounts receivable . . . ." 672 S.W.2d at 948 (quoting In re Marriage of Nichols, 606 P.2d 1314, 1315 (Colo. Ct. App. 1979)) (emphasis added). Based on this, that court held that it could distinguish professional degrees and professional goodwill. This is correct to the extent that, unlike for a professional degree, some businesses may be able to establish value beyond fixtures and accounts receivable. Examples of this include when a practitioner is part of a group practice, or is selling the name of a practice such as "Smith Pharmacy," or any other reputational thing a buyer could reasonably be expected to pay for. The analysis falls short in that it fails to consider that part of goodwill that is personal and nontransferable, much like the professional degree. It is obvious that in some cases, depending on the facts, goodwill can belong primarily or only to the person, precisely as a professional degree belongs only to the person. If value is to be decided on a fair and reasonable basis, and property divided equitably, this must be considered.

Since the mid-eighties, when Heller was decided, trial courts have had increasing opportunities to look at this issue, not only in Kentucky but throughout the nation. This led to development of the concepts of "personal"

10

and "enterprise" goodwill, recognizing that there could be some goodwill associated with a business, and some that was solely due to the personal qualities of the practitioner. In states adopting this view, valuations take into consideration, based on the factual proof, whether any goodwill could reasonably be marketable as continuing with the business absent the presence of a particular person. An excellent review of how this distinction is being applied, at the time of its rendering, was done in May v. May, 589 S.E.2d 536 (W.Va. 2003).

In May, the Supreme Court of West Virginia found from its survey that 13 courts made no distinction between personal and enterprise goodwill, 5 courts held that goodwill is not a part of marital property, and 24 states differentiated between personal and enterprise goodwill. Even though there was no Kentucky Supreme Court opinion on the subject, the West Virginia Supreme Court included Kentucky among the thirteen that made no distinction, citing the Court of Appeals' opinion in Heller. The May court joined the 24 jurisdictions that distinguish between enterprise and personal goodwill. In reaching its decision, the court relied substantially on an opinion of the Supreme Court of Indiana, which explained in detail the rationale behind distinguishing between personal and enterprise goodwill as follows:

> Goodwill has been described as the value of a business or practice that exceeds the combined value of the net assets used in the business. Goodwill in a professional practice may be attributable to the business enterprise itself by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. It may also be attributable to the individual owner's personal skill, training or reputation. This distinction is sometimes

11

reflected in the use of the term "enterprise goodwill," as opposed to "personal goodwill."

Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers. Factors affecting this goodwill may include a business's location, its name recognition, its business reputation, or a variety of other factors depending on the business. Ultimately these factors must, in one way or another, contribute to the anticipated future profitability of the business. Enterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business. It is not necessarily marketable in the sense that there is a ready and easily priced market for it, but it is in general transferrable to others and has a value to others.

. . .

In contrast, the goodwill that depends on the continued presence of a particular individual is a personal asset, and any value that attaches to a business as a result of this "personal goodwill" represents nothing more than the future earning capacity of the individual and is not divisible. Professional goodwill as a divisible marital asset has received a variety of treatments in different jurisdictions, some distinguishing divisible enterprise goodwill from nondivisible personal goodwill and some not.

. . . [W]e join the states that exclude goodwill based on the personal attributes of the individual from the marital estate.

. . . [B]efore including the goodwill of a self-employed business or professional practice in a marital estate, a court must determine that the goodwill is attributable to the business as opposed to the owner as an individual. If attributable to the individual, it is not a divisible asset and is properly considered only as future earning capacity that may affect the relative property division. In this respect, the future earning capacity of a self-employed person (or an owner of a business primarily dependent on the owner's services) is to be treated the same as the future earning capability and reputation of an employee.

Some ownership interests in a professional practice are properly viewed as divisible property even if goodwill is a component of their value. Otherwise stated, even a professional practice can have an enterprise goodwill component to its value. ...

. . .

In sum, to the extent a business or profession has goodwill (or has a value in excess of its net assets) it is a factual issue to

12

what extent, if any, that goodwill is personal to the owner or employee and to what extent it is enterprise goodwill and therefore divisible property.

Yoon v. Yoon, 711 N.E.2d 1265, 1268-70 (Ind. 1999) (citations and quotation marks omitted).

In this first look at the subject, this Court finds the reasoning of Yoon and May to be compelling. The distinction between enterprise and personal goodwill has a rational basis that accepts the reality of specific business situations. In a case such as this one, there can be little argument that the skill, personality, work ethic, reputation, and relationships developed by Gaskill are hers alone and cannot be sold to a subsequent practitioner. In this manner, these attributes constitute nonmarital property that will continue with her regardless of the presence of any spouse. To consider this highly personal value as marital would effectively attach her future earnings, to which Robbins has no claim. Further, if he or someone similarly situated were then awarded maintenance, this would amount to "double dipping," and cause a dual inequity to Gaskill. On the other hand, if she were willing to leave her name on the practice, such as "Gaskill's Oral and Maxillofacial Surgery," even though she herself did not continue to practice, there arguably could be some reputational reliance that she would stand behind the quality of the practice which could have some pecuniary value. Such scenarios do occur, but this is not the case here.

Additionally, this type of distinction is as susceptible to expert valuation as goodwill on the whole is. If the value of goodwill can be reasonably

determined at all, the amount of enterprise goodwill, which is all that can be considered as marital property, can be determined.

Therefore the trial court erred in failing to consider personal and enterprise goodwill. In so stating, this Court is not unmindful that there was no definitive Kentucky law for the trial court to apply at the time of its ruling, and its opinion is otherwise thoughtful and well-written.

## B. Valuation Methods

We have accepted that goodwill can have pecuniary value if the trial court finds that there is reasonable evidence to support its value. In reaching a value, the trial court must have a rational basis for applying given accounting principles. Its decision must be supported by adequate evidence, and should avoid speculation and assumptions as much as possible.

In this case, both experts testified to multiple accounting methods of measuring value. Wheeler chose a specific method, gave his reasons for choosing that method, and explained where his data came from. Callahan, in contrast, did not directly obtain data, and calculated the value of the practice using four different methods, with a different value derived from each. He found all the methods to be reliable, and unable to choose, averaged the numbers to get a value.

While the trial court is free to determine the credibility of any witness, it cannot make a determination that is clearly erroneous or an abuse of discretion. Using an average to obtain a value, without some basis other than an inability to choose between conflicting and competing valuation methods, is nothing more than making up a number, for there is no evidentiary basis to

support that <u>specific</u> number. Employing all four methods, then averaging them, is tantamount to no method at all. If an expert believes four methods are valid, yet each produces a different number, this provides little or no help to the trial court. The trial court must fix a value, and there should be an evidence-based articulation for why that is the value used. While an average may present the easiest route, it lacks the proper indicia of reliability. Thus, the trial court abused its discretion in relying on Callahan's estimate of $669,075 as the value of the practice. Also, since this means there was no reliable evidence to support a finding of a $669,075 value, the trial court's factual finding of such a value was clearly erroneous.

Further complicating the matter, the practice is not actually being sold and was assigned in its entirety to Gaskill. Part of the value the trial court relied on that could impact a goodwill valuation was the assumption by Callahan that a non-compete agreement should be a part of the valuation. While fair market value of Gaskill's practice anticipates what a willing buyer would give a willing seller, the fictional sale must be viewed as a "fire sale," meaning that it must be valued in its existing state. This precludes factoring in a non-existent non-compete clause, as there is no requirement that she enter into one other than as a possible negotiated term of a real sale. It was improper to include such a speculative item to enhance the value of the practice.

### C. Equitable Division of Marital Property

KRS 403.190 requires a trial court to divide marital property in "just proportions," considering "all relevant factors," and specifically includes four

15

factors that must be considered: contribution of each spouse to the acquisition of marital property, value of nonmarital property to each, duration of the marriage, and the economic circumstances of each spouse when the division of property is to become effective.

In its opinion, the trial court specifically listed each category. The trial court acknowledged that Gaskill's earned income that was contributed to the marital estate was much greater than her husband's, but gave weight to the testimony that he had assisted her in carrying out her oral surgery practice, was employed full time outside the home, and contributed all of his earnings to the marital estate. The court also found that he shared equally in home and parenting duties. Given the nature of Family Court and the length of this action, the trial court no doubt had an understanding of the testimony in ways a stranger to the case may not have. It had discretion to determine the credibility of all witnesses and the weight to give to each. The trial court was well aware of the length of the marriage and found that Gaskill's ability to earn in the future, and thereby rebuild her estate, "far exceeds that of [Robbins]." It also found that the nonmarital property of each party did not impact the division of marital property. After considering all this, the trial court divided the marital estate 50-50 between the parties.

Gaskill argues that the most significant factor in division of the marital property is the great disparity between the respective financial contributions of the two parties, and that the weight of the evidence does not support a 50-50 division. She and the Court of Appeals inferred that the trial court acted under a mistaken belief that it must presume a 50-50 division, or that there is at

least a "disturbing trend" for trial courts to do so. The law is clear that there is no presumption of a 50-50 division without regard to the evidence. Herron v. Herron, 573 S.W.2d 342 (Ky. 1978). The trial court recognized this law in its opinion. Moreover, because a court must divide the marital estate "in just proportions," starting the parties off in an even position in order to determine how to apportion is not unreasonable, provided that the trial court considers "all relevant factors." In fact, given that each party is an equal owner in the marital estate until the trial court divides it, the parties are in exactly the same position when the court begins dividing marital property. How the trial court ends up splitting the property must be based on record evidence, with an eye toward equity.

The property division statute looks at each spouse's contribution to acquiring the marital estate, and there is no question that on that factor the weight of the evidence lies in favor of Gaskill if numbers alone are considered. However, while the amount of the marital estate may be easily allocated between earners, the ability to work with the support of a spouse and co-parent is an intangible that goes beyond dollars. All of the work done by either spouse during the marriage is done for the marital purpose: having someone, within the bounds of law, with whom one shares a union that allows for joint homemaking, co-parenting if children are born, and experiencing life in general with another. Within the marital arrangement, abilities are often unequal, the use of one's time varies according to present need, and each spouse does things to accommodate the other. How the parties earn money and build wealth is affected by these variables, but is done for common purpose. The

17

term "contribution" thus has tangible and intangible components that must be weighed by the trial court.

Another important statutory factor is what the economic circumstances of the parties will be at the time the property division becomes effective. To determine this, the trial court can look at the nonmarital property each has been awarded, if any, and the future earning capacity of each spouse. Just as the actual earnings disproportionately come from Gaskill, her ability to earn after the divorce is disproportionate. This is a factor the trial court can consider in Robbins's favor in making the decision as to just proportions of the marital property, and the trial court did specifically note it here. Because of the disposition the trial court made of the marital property, it did not award maintenance to Robbins even though the great disparity in income earning ability would otherwise have supported it.

This Court will not infer that the trial court believed it <u>must</u> divide the marital estate 50-50 in light of the express statement in its opinion that "'just proportions' does not require equal division," and that "a presumption of equal division absent evidence to the contrary is improper." There was evidence to support the trial court's determination that the marital estate should be divided 50-50, which is clearly reflected on the video record of the testimony of both parties about the participation each had during the marriage. While other reasonable courts may have weighed the evidence differently, this Court cannot find that the trial court abused its discretion in dividing the marital estate as it did.

The Court of Appeals declined to rule on the trial court's distribution of the marital property as a whole, and Gaskill appealed on this issue. Construing that failure to rule as a ruling adverse to Gaskill, this Court finds that the trial court did not abuse its discretion in dividing the marital estate, and affirms its division.

## III. Conclusion

The decision of the Court of Appeals as to goodwill and the trial court's valuation and division of Gaskill's medial practice is affirmed, though on grounds other than those stated in its opinion, and the judgment of the trial court as to the proportions of marital property division is affirmed. This case is remanded to the Warren Family Court to determine the value of Gaskill's oral surgery practice consistent with the discussion herein and to divide the marital estate accordingly.

Cunningham, Schroder and Scott, JJ., concur. Venters, J., concurs with Justice Noble's well-reasoned opinion, but strongly disagrees with its criticism of all expert valuations based on an average of various valuation methods. Abramson, J., concurs in part and dissents in part by separate opinion. Minton, C.J., not sitting.

19

COUNSEL FOR APPELLANT/APPELLEE:

Glen S. Bagby
J. Robert Lyons, Jr.
Woodward, Hobson & Fulton, LLP
200 West Vine Street, Suite 500
PO Box 1720
Lexington, Kentucky 40588-1720

James E. Keller
Gess, Mattingly & Atchison, PSC
201 West Short Street
Lexington, Kentucky 40507-1269

Betty Reece Herbert
Brian Keith Pack
Herbert, Herbert & Pack
135 North Public Square
PO Box 1000
Glasgow, Kentucky 42142-1000


COUNSEL FOR APPELLEE/APPELLANT:

David A. Lanphear
Lanphear & Walton, PLLC
1131 Fairway Street
PO Box 128
Bowling Green, Kentucky 42101-0128

# Supreme Court of Kentucky

2007-SC-000190-DGE
2007-SC-000207-DGE

JULIE ANNE GASKILL                                          APPELLANT/APPELLEE

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2005-CA-002088-MR
WARREN CIRCUIT COURT NO. 03-CI-01652

JON KEVIN ROBBINS                                          APPELLEE/APPELLANT

**OPINION BY JUSTICE ABRAMSON**

**CONCURRING IN PART AND DISSENTING IN PART**

I concur with all parts of the majority opinion except the prohibition on consideration of a covenant not to compete. If expert testimony establishes that such covenants are an integral part of a sale of a professional practice (as they typically are, in my opinion) the expert should be able to take into account the covenant not to compete in valuing the practice.