RENDERED: SEPTEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0590-MR

STEPHEN DOUGLAS KEEN                               APPELLANT

              APPEAL FROM HENDERSON FAMILY COURT
v.        HONORABLE JOE W. HENDRICKS, JR., SPECIAL JUDGE
                     ACTION NO. 20-CI-00450

THERESA LORRAINE KEEN                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND McNEILL, JUDGES.

CETRULO, JUDGE: Appellant Stephen Douglas Keen ("Stephen") appeals from a decree of dissolution of marriage from Appellee Theresa Lorraine Keen ("Theresa"). On appeal, Stephen argues that the family court abused its discretion by compelling a sale of the marital business. Finding no error or abuse of discretion, we affirm.

# I. BACKGROUND

Stephen and Theresa were married in September 1991 and had two children. In 1997, the couple started an auto body shop, Steve's Auto Body & Paint ("marital business"). This marital business was their main source of income through the majority of the marriage. For 27 years, Stephen worked full-time at the marital business. The record was unclear as to the extent of Theresa's involvement in the marital business, but her contributions at the shop were significantly less than Stephen's, and at the time of dissolution, Theresa was employed by the Webster County Board of Education.

On March 7, 2022, the family court conducted a six-hour evidentiary hearing ("March Hearing") which was intended to be the "final" hearing in the matter.[1] Theresa was represented by legal counsel, and Stephen appeared *pro se*. During that hearing, both parties submitted exhibits and presented evidence. Theresa and Stephen were the only witnesses to testify.[2] The family court granted Stephen great leniency throughout the hearing, instructing him on the law, helping him phrase questions to avoid hearsay, listening to arguments beyond the scope of the current hearing, and many other allowances. The family court stated at the

---

[1] The hearing was postponed more than once to allow Stephen to gather witnesses, none of whom testified at the March Hearing. At the start of the March Hearing, Stephen stated that he hoped to finish the trial that day, and did not want to postpone the hearing further.

[2] Stephen attempted to call his two children as witnesses, but neither were present.

beginning of the hearing, "I need to know what the assets are, what the debts are, evidence to support how they are to be allocated, that's what I'm focused on." However, Stephen struggled to stay within those justiciable issues throughout the proceeding.

After hours of testimony, the family court verbally walked through the distribution determinations for Theresa's counsel to draft and tender. The marital allocations were complex due to the conflicting testimony and convoluted evidence, but in pertinent part, the marital business was allocated to Theresa with instructions to sell the property (and its contents), and the proceeds were to be used to pay off the couple's various debts, liens, and encumbrances. At the conclusion of the hearing, the family court instructed the parties to assist in the sale and distribution of assets and instructed Stephen to deliver the marital business key to the office of Theresa's counsel by noon the following day. Stephen did not deliver the key.

The next day, on March 8, 2022, the family court entered a temporary order pending preparation of a final decree that, in part, granted Theresa ownership of the marital business and its contents, instructed Stephen to return all property removed from the marital business,[3] and stated that failure of Stephen to do so would result in a finding of contempt.

---

[3] Except his dog, clothing, medications, and personal effects.

Thereafter, Stephen filed a motion to set aside the decree[4] and a motion seeking emergency custody of the youngest child.[5] Theresa filed a motion to approve the sale of the marital business and a motion for contempt. A second evidentiary hearing was held on April 12, 2022 ("April Hearing"). At this seven-hour April Hearing, Theresa was again represented by counsel; Stephen AGAIN appeared *pro se*. While the family court attempted to limit testimony to relevant, properly preserved arguments, it again granted Stephen great latitude. The hearing did not substantively alter the family court's prior oral determinations.

On April 13, 2022, the family court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage ("Final Decree"). In the Final Decree, the family court, in relevant part, authorized Theresa to liquidate the marital business "in a reasonably prompt and commercially reasonable manner" in order to satisfy the marital debts including taxes, the business property mortgage, debts owed to business suppliers, and other encumbrances. The Final Decree indicated that Stephen had made arguments without evidentiary support, and that the family court questioned Stephen's veracity. Stephen moved for post-judgment relief under Kentucky Rules of Civil Procedure ("CR") 59.02, 59.05, and

---

[4] A final decree of dissolution had not yet been entered.

[5] At the time Stephen petitioned for dissolution of the marriage in 2020, only the youngest child was still a minor.

60.02.[6]  The family court denied Stephen's motion in full in a written order entered on April 26, 2022 ("Hearing Order").  Stephen appealed.

## II.  STANDARD OF REVIEW

Here, Stephen challenges the family court's determination that the marital business was not a going concern[7] at the time of dissolution, the sale of that business, and the use of sale proceeds to pay off the marital debts.[8]

The family court's findings of fact are reviewed pursuant to CR 52.01.  CR 52.01 provides that "[f]indings of fact, shall not be set aside unless clearly erroneous[.]"  A finding of fact is not clearly erroneous if supported by substantial evidence of a probative value.  *Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003).

Kentucky Revised Statute ("KRS") 403.190 governs the disposition of marital property in a dissolution of marriage.  Family courts have broad discretion in dividing marital property, and this Court may not disturb a family court's ruling

---

[6] Stephen filed this same motion twice:  once before the Final Decree was entered, and an identical motion after the family court entered the Final Decree.  However, Stephen did not argue for a new trial (CR 59.02), nor did he argue which grounds under CR 60.02 were relevant, leaving CR 59.05 (motion to alter, amend, or vacate a judgment).  However, denial of a CR 59.05 motion is interlocutory and not subject to appellate review.  *See Ford v. Ford*, 578 S.W.3d 356, 365 (Ky. App. 2019).  Therefore, our review is focused on the Final Decree and the evidentiary hearings supporting that order.

[7] "Going concern" refers to "[a] commercial enterprise actively engaging in business with the expectation of indefinite continuance."  BLACK'S LAW DICTIONARY (11th ed. 2019).

[8] Stephen also appealed the custodial determination, but as the youngest child is now of the age of majority, that issue is moot.

as to the division of marital property, unless it has abused its discretion. *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "[A] trial court is not obligated to divide the marital property equally. Rather, a trial court need only divide the marital property 'in just proportions.'" *Smith*, 235 S.W.3d at 6 (citations omitted).

### III.  ANALYSIS

On appeal, the parties agree that the business in question was a marital asset under KRS 403.190(3). The marital business was established in 1997, five years after the marriage. At the time Stephen petitioned for divorce, the state of the business was in question. The parties disagree about how much business was being conducted at the time of dissolution, and whether Stephen, with his health issues, was still able to keep the business operating. At the time of dissolution, the value of the marital business assets – building, tools, equipment – was valued at less than the business debts.

At the March Hearing, the family court took great pains to determine if the marital business was still a going concern.

The Court:  I'm trying to figure some of this out. I've heard you say that you're disabled, or you think you're disabled, you believe you qualify for disability. Are you working now?

> Are you working in the [marital business] that we've been talking about?

Stephen: Yes, sir.

The Court: Okay, but you have no income other than the income from . . . .

Stephen: I had income. The problem is, without being able to refinance, Judge, I, as one person, cannot generate enough income to cover the overhead. I mean it's a 9800 square foot place; I mean the utility bill is $1600-$1900 a month. The only people that I have talked to, that I know are qualified [to work for me], wouldn't take the position because they knew I was going through this divorce and them having a job might be temporary.

The Court: The reason I ask the question is, it's a business that's a marital asset, the assets in the building, of the business, are marital assets, so I'm gonna have to decide how to equitably apportion those assets, or what I'm going to do with them, and I'm trying to figure out if the evidence in this case is that this business is a going concern which would justify its continued operation by you or does it just need to be sold and I'm not getting a clear answer from you whether or not . . . it's an on-going enterprise, you can continue its operation.

Stephen: I've done it for 27 years. I can't do it when I am cut off from the bank.

The Court: Alright.

During that same hearing, Theresa also testified about the state of the marital business.

Theresa's Counsel: The Judge asked [Stephen] if the business was still a going concern, had value as a business. Have you, over the course of the

-7-

| | |
|---|---|
| | last – almost two years – had cause to observe or be aware of what's going on at the shop? |
| Theresa: | Yes. |
| Theresa's Counsel: | You can't rely on, "oh somebody told me" or "I heard from so-and-so." Do you, yourself, know if there is still on-going business activities at the shop? |
| Theresa: | Very little . . . there's very little activity going on at the shop. |
| Theresa's Counsel: | What is your basis for believing that? |
| Theresa: | The parking lot is empty.[9] |
| Theresa's Counsel: | Has it been empty the last two years? |
| Theresa: | It has steadily been dwindling, yes. |
| The Court: | The parking lot is empty of cars that have been waiting for repair? |

Theresa nodded her head in affirmative.

| | |
|---|---|
| Theresa's Counsel: | And I dimly recall over a year ago, there had been a civil discovery request for [Stephen's] business records. As well as you can recall . . . have you ever been provided with records as part of the discovery process? |
| Theresa: | Not a complete set, no. |

---

[9] Later during the trial, Stephen stated that all the cars he worked on were *inside* the building, but Theresa then argued that that was not true.

In the family court action, Stephen argued that Theresa (and the couple's adult son) were trying to steal his livelihood from him. Theresa argued that there was no business remaining to steal and selling the real estate to pay off the marital debt was the most equitable solution. On appeal, Stephen argues the family court erred by assigning him much of the marital debt and forcing the sale of the marital business to pay that marital debt, but Stephen did not present a cohesive plan or logical argument to support any other alternative. In fact, during the proceedings, both parties mentioned the possibility of bankruptcy, and the family court stated, "[w]e can avoid bankruptcy if we manage this right."

During the March Hearing, Stephen did not produce records or call witnesses to show the business was a going concern. At the April Hearing, Stephen called witnesses to testify that business was ongoing, but, as the family court noted during the hearing, that testimony was limited in its scope and did not show a pattern or consistency to the work. Stephen did not argue (or call witnesses or admit evidence) to show how or if he would be able to sustain the business. Stephen did not state if he was physically able to do the work nor how/if/who he would hire as an employee to assist him. Stephen stated he had undergone multiple back surgeries and was managing pain with medicine, but it was unclear if this amounted to a disability that prevented him from working or if he was able to

sustain the business despite the pain. In fact, throughout the trial, Stephen's evidence was inconsistent and conflicting.

For instance, during the March Hearing, the family court attempted to determine who owned a truck that was once part of the marital estate. During the March Hearing, Stephen – within a five-minute period of testimony – stated the title to a truck was held by himself, then he testified that his paramour held title, and then he testified that "the State of Indiana" held title. During the April Hearing, Stephen was asked the current location of this truck. He stated he did not know the location, but his paramour testified that same day that the vehicle was currently in her garage. After further inquiry, Stephen's paramour confirmed that Stephen was living with her and he had been in her garage. As a result, the family court wrote in the Hearing Order that Stephen "likely perjured himself[,]" and noted in the Final Decree that Stephen "engage[d] in vexatious and harassing litigation in this matter."

"[D]ue regard shall be given to the opportunity of the family court to judge the credibility of the witnesses." CR 52.01. Here, the family court had the opportunity – more than 13 hours combined within the March and April Hearings, numerous motions, extraneous communications with the court,[10] and a record

---

[10] Stephen sent "a significant number of communications" directly to the court's staff and the county clerks, in addition to the motions filed with the court.

lasting more than two years – to evaluate the credibility of both Stephen and Theresa. It is clear the family court did not find Stephen to be credible.

Stephen argues on appeal that the family court abused its discretion by not allowing him to purchase the marital business, buy out Theresa, and continue to own his auto body shop. Stephen states in his brief that he "offered to purchase his business for $185,000," which was "$5,000 more than the proposed and accepted purchase price." However, it was not Stephen who was attempting to purchase the marital business. During the March Hearing, Stephen expressed doubt as to his ability to obtain a loan from Field & Main Bank. During the April Hearing, Stephen's paramour testified that she would purchase the marital business on Stephen's behalf. She *held*[11] a letter from Field & Main Bank stating that she had obtained loan pre-qualification to purchase the marital business property. However, she admitted under oath that she did not possess the elements that the pre-qualification was subject to, including a current property appraisal of the business. She further testified that the pre-qualification was only valid for 30 days, as set forth within a letter dated two weeks prior.

Additionally, Stephen argues on appeal that his goodwill was not included in the valuation of the marital business. He argues that the success of this

---

[11] That letter was not made part of the record, or if it was, an independent review by this Court was unable to locate it within the voluminous record.

business had been "100% attributable to *my name, my reputation, and my own skillset*." However, Stephen did not proffer a goodwill value to the family court, present evidence of a goodwill value, nor call witnesses to value the business. As Theresa argues in her brief, "The [family] court cannot consider a value that was never provided." Theresa only presented an appraisal for the property and argued that the real estate value alone *was* the business value. Moreover, if the intangible value that Stephen is requesting is *personal* goodwill,[12] that type of goodwill depends on the continued presence of a particular individual and "represents nothing more than the future earning capacity of the individual[.]" *Gaskill v. Robbins*, 282 S.W.3d 306, 314 (Ky. 2009). However, it was unclear how and if Stephen was going to be able to continue with the marital business due to his medical concerns and his inability to find personal financing.

When a business is established during a marriage and is thus marital property, the family court is required to fix a value and divide it between the spouses. *Id.* at 311. That is exactly what the family court did, to the best of its ability, with the information provided. The family court correctly stated that it had to make findings based on the evidence presented:

> There are a few fact-finding issues we should have been able to do. If everyone had simply put their cards on the table, by [supplying] valuations of what they own instead

---

[12] It appears that Stephen is arguing *personal* goodwill (nonmarital) is the goodwill in question, not *enterprise* goodwill (marital), but the argument was made without specificity.

of having all of this chasing things down, and irrelevant arguments and emails that go on forever that cover things that were ruled on before. . . . I just got what I got. And I sat through a full day hearing. . . . But [Stephen] focuses on five thousand different issues. He could have used an attorney to help him narrow and focus in the issues that were being contested and presented competent evidence. Instead, we're here talking about everything in the world and it's 7:20 in the evening. . . . This is not a therapy session. This is a court of law. I'm here to divide property. . . . I'm going to try and figure this out.

Accepting Stephen's argument – that the sale of the marital business was an abuse of discretion – would require us to hold that the family court erred by making a decision based on the only evidence presented.

## IV.   CONCLUSION

We find that there was substantial evidence to support the family court's finding that the marital business was not a going concern. We find no abuse of discretion in the family court's conclusion that an equitable distribution included the sale of the marital business. Therefore, we AFFIRM the Henderson Family Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Thomas E. Springer, III
Madisonville, Kentucky

BRIEF FOR APPELLEE:

Christopher Stearns
Morganfield, Kentucky